OPPLE ET AL. V. RAY.
[No. 26,433. Filed April 9, 1935. Rehearing denied June 24, 1935.]

*Ralph K. Kane, Gideon W. Blain,* and *Robert Hollowell, Jr.,* for appellants.

*George Burkhart, James L. Clark,* and *Archie J. Kahl,* for appellee.

FANSLER, C. J.—Appellee brought this action to re-

cover damages for personal injuries resulting from a collision between an automobile in which he was riding and an automobile owned by appellant William A. Opple, and driven by appellant Helen Opple, his daughter. There was a verdict and judgment for appellee for $1,000.

Appellant Wliliam A. Opple predicates error upon the overruling of his motion for a new trial, which involves the sufficiency of the evidence, and the overruling of his motion for judgment upon the answers to interrogatories submitted to the jury. Appellant Helen Opple predicates error upon the overruling of her separate motion for a new trial, which involves the sufficiency of the evidence only, and the sustaining of plaintiff's motion to strike out her second paragraph of answer.

It is alleged in the complaint, the sufficiency of which is not questioned here, that Helen Opple was a minor, and did not have a license to drive a motor vehicle, both of which facts were known to appellant William A. Opple; that he permitted her to take and use his automobile, knowing that it was to be used on the highway, and knowing that the lighting system on the car was defective, and that the tail-light would not operate; that the automobile ran out of fuel, and that Helen Opple allowed it to stand in the center of the highway without any tail-light or headlight; that the driver of the automobile in which plaintiff was riding was not able to see the parked automobile in time to avoid a collision with it; that plaintiff was injured in the collision.

It is clearly established that Helen Opple was not a minor, but of full age, at the time of the accident; that she had no driver's license; that she operated her father's car upon the highway at night, and ran out of gasoline, and permitted it to stand parked in the trav-

eled way on the pavement; and that the car in which appellee was riding collided with it; that he was injured in the collision. She left her father's house in the car after dark. There is undisputed testimony that the car in which appellee was riding approached the parked car from the rear, traveling at 30 to 35 miles an hour; that as it approached the parked car another car was approaching from the opposite direction with headlights burning; that at that time the headlights on the car in which appellee was riding cast their direct rays only 12 or 15 feet ahead; and the testimony varied as to the distance in front of the car in which an object could be seen, from 45 to 75 feet. The driver testified that he did not see the parked car until within 12 or 15 feet of it, and until too late to avoid colliding with it. There is some testimony that the tail-light on the parked car was burning, but many witnesses testified that it was not burning. Witnesses testified to conversations with William A. Opple in which he said the lighting system on his car was out of order, and that he knew it, and there were circumstances in evidence indicating that some of his family were also acquainted with this fact. There was evidence offered and admitted tending to prove that Helen Opple was not familiar with the operation of an automobile, and that she had not driven one for more than a year.

The jury answered interrogatories to the effect that at the time of the accident Helen Opple was 22 years of age; that she did not have an automobile driver's license; and that on the evening of the accident William A. Opple gave his permission to his daughter Edna, who did have a driver's license, to use his car to go to Mooresville, and that Edna turned the automobile over to Helen, and that William A. Opple knew of, or consented to, the automobile being turned over to Helen,

and that he knew that Helen had no driver's license; that the proximate cause of the collision was "obstructing the highway without displaying proper signals"; that when the automobile ran out of gas and stopped, Helen left the scene of the accident, which a reasonably prudent person would not have done under the circumstances; and that she failed to remove the car from the highway, and failed to display a proper signal, which a reasonably prudent person would have done under the circumstances.

Both plaintiff's and defendants' tendered instructions, which were given, assume that permitting an unlicensed person to operate an automobile, at least if that person is a minor, constitutes negligence, and if that negligence was a proximate cause of the injury there would be liability. But we are unable to see how minority, or lack of an operator's license, could be the proximate cause of an injury. It is true that lack of skill or knowledge concerning the operation of an automobile may cause an injury; and some evidence was introduced tending to establish that Helen Opple was not familiar with the operation of an automobile. But if a person, adult or minor, unlicensed to operate an automobile, is intrusted with one and operates it with that degree of care and skill that is required of a licensed operator, negligence cannot be predicated upon the mere fact of minority or lack of an operator's license.

It is generally said that an automobile is not a dangerous agency; but it is unlawful and highly dangerous to operate an automobile on the highway at night without lights, and an automobile so operated is a dangerous agency. When William A. Opple intrusted the defective automobile to his daughter, knowing that it was to be used on the highway in the dark,

he was bound to anticipate that the automobile might be stopped upon the road, or that it might be operated at a low rate of speed, and that under such circumstances a collision from the rear was highly probable.

Where a bailor intrusts a dangerous article to a bailee, knowing that it will be used in such a manner as to endanger persons and property, he is chargeable with negligence and answerable in damages for any injury which, by the exercise of ordinary prudence, he could have foreseen. *Fisher* v. *Fletcher* (1922), 191 Ind. 529, 133 N. E. 834; 42 C. J. 1077.

It is contended by William A. Opple that the fact that the car was standing in the road was the proximate cause of the injury to appellee, and that the negligence of his daughter in so leaving the car there, and not pushing it from the road, is an intervening cause which would protect him from liability. But an intervening agency will not be deemed the sole proximate cause of an injury where the circumstances surrounding the intervention were such as could reasonably have been expected to occur in the ordinary course of events as indicated by common experience. If the negligence involved in leaving the car in the road without a tail-light is separable from its use on the road without a tail-light, they were at least concurring causes of the collision. There was ample evidence to sustain the verdict and to sustain the jury in its special finding that the proximate cause of the collision was "obstructing the highway without displaying proper signals." We have given a substantial summary of the answers to the interrogatories. They are not at all inconsistent with the general verdict; and the motion for judgment, notwithstanding the general verdict, was properly overruled.

Appellants contend that the plaintiff was chargeable

with contributory negligence because the driver of the car was violating the statute, which requires that headlights must be visible for 500 feet, and such as to enable the driver to see an object the size of a man 200 feet in front of the car in the direction in which it is proceeding. The statute in question, section 47-504, Burns 1933, §11154, Baldwin's 1934, also provides that the operator of a car shall, when approaching and about to pass a car traveling in the opposite direction, dim or reduce the front lights on his car so that the rays projected therefrom will not blind or confuse the other driver. Under statutes similar to this, it has been held in most jurisdictions that a car must be equipped with such lights and must proceed at such speed that the operator will be able to stop before colliding with any object in his path; and this court denied petitions to transfer in two cases, which seems to indicate an adherence to such a rule. Both cases, *Pennsylvania R. Co.* v. *Huss* (1933), 96 Ind. App. 71, 180 N. E. 919, and *C. C. C. & St. L. R. Co.* v. *Gillespie* (1933), 96 Ind. App. 535, 173 N. E. 708, involved the collision of an automobile with a freight train standing upon a railroad crossing in the dark. In both cases it was held that to drive an automobile at such a speed that it could not be stopped within the distance that objects could be seen ahead of it was contributory negligence as a matter of law, and that the question of proximate cause is not properly submitted to the jury. Many cases from many jurisdictions are cited to support the proposition, but it seems to us that the statement is too broad. Statutory provision is made for the maintenance of signs at the side of the highway indicating the approach to a railroad crossing. The signs are maintained for the protection of those using the highway. Reasonable prudence requires that one using the highway take care to observe

such signs, and take notice of the proximity of a railroad track, which is of itself notice of danger. No negligence on the part of the railroad company was shown in either of the cases, and there was no basis for recovery in any event.

The statute does not establish a fixed standard of distance for which lights must provide visibility. The requirement that lights be dimmed or deflected negatives the intention to fix such a requirement. Such a provision would be impossible of compliance. Weather and atmospheric conditions, the color of objects and their background, intervening or approaching lights, and perhaps other elements, affect the visibility of objects not only at night, but in the daytime. The coloring of birds and animals, of uniforms of soldiers, of ships, and the equipment of war, designed to blend with surroundings and background, are known to decrease their visibility. From the standpoint of reasonable care, speed has a direct relationship to visibility. The statute merely provides a mechanical standard for lighting equipment, and was not intended to fix a standard of care. This standard is fixed by section 47-516, Burns 1933, §11169, Baldwin's 1934, which is as follows: "No person shall drive or operate a motor vehicle or motor-bicycle upon any public highway in this state at a speed greater or less than is reasonable or prudent, having regard to the width of the highway, the density of the traffic, the condition of the weather and the use of the highway, or so as to endanger the life or limb or injure the property of any person. . . ." This is the measure of care required of the driver of a motor vehicle upon the highway. One who travels the public highway in the daylight is not charged with the duty of seeing every dangerous obstruction, and stopping before coming in contact with it, upon penalty of

being chargeable with contributory negligence. A traveler upon a highway regularly used by the public has a right to assume that the way is reasonably safe for ordinary travel. *City of Indianapolis* v. *Gaston* (1877), 58 Ind. 224; *Town of Elkhart* v. *Ritter* (1879), 66 Ind. 136; *Noblesville, etc., Co.* v. *Loehr* (1890), 124 Ind. 79, 24 N. E. 579.

A traveler must use his faculties in an ordinary manner to discover dangers. He is not required to anticipate extraordinary hazards, nor to constantly expect and search for unusual dangers. Day or night, a traveler on the highway is charged with the duty of exercising ordinary care to observe dangers and obstructions, and is only chargeable with notice of obstructions that a person of ordinary prudence would be reasonably expected to observe. The operator of an automobile on a heavily traveled highway cannot reasonably be expected to see a guy-wire stretched across the way even in the daytime, or a chain or pole left across the way, unlighted, at night. If a pole or metal bar were permitted to project several feet into the highway from a truck parked at the edge of the traveled way, the driver of a motor car who collided with it and was injured, could not reasonably be charged, as a matter of law, with knowledge of the situation even though the truck were properly lighted. The conclusion is unavoidable that the hard-and-fast rule, that one who operates a motor car at night must equip his car with such lights, and proceed at such speed, and observe the way with such care, that he will see any dangerous obstruction in the highway, and that he must stop before collision and injury to himself under penalty of being chargeable with negligence contributory to his own injury, is basically and fundamentally unsound, and the question of negligence must be determined from the

facts and circumstances in each case. A driver is bound to observe the red tail-light of a car in front of him, proceeding in the same direction, and, still, he is not necessarily chargeable with negligence should he collide with such a car if it should stop suddenly and unexpectedly, and without signaling.

It is unlawful for any person to park or leave a motor vehicle upon the highway between the hours of one-half hour after sunset to one-half hour before sunrise without displaying upon the front two lighted white lights, properly dimmed, and one lighted red light on the rear. (Section 47-505, Burns 1933, §11158, Baldwin's 1934.) One who is driving on the highway in a reasonably prudent manner has the right to presume that there is no car upon the traveled way in the dark, unlighted; and if he collides with such a car, without notice of its presence, or of facts which would put a reasonably prudent person upon notice of danger, he cannot be charged with negligence contributing toward the collision.

In the case of *Indianapolis Glove Co.* v. *Fenton* (1929), 89 Ind. App. 173, 166 N. E. 12, it appears that a truck was standing still on the highway, occupying the greater portion of the pavement, with its tail-light completely hidden and obscured from sight by a canvas. It was raining. The automobile in which the appellee was riding approached the truck from the rear. Another automobile was approaching, with lights burning, from the opposite direction. It was dark. It was said that "the driver of the automobile in which appellee was riding could not and did not see said truck, or know or have reason to know that it was standing as aforesaid until within a few feet of and immediately upon it and too near the same to stop and thereby avoid a collision." The court further said (p. 175): "Appellant contends

that the complaint shows on its face that the driver of the automobile in which appellee was riding was guilty of contributory negligence, because he could not and did not see appellant's truck, or have reason to know that it was parked and standing with its right side five feet from the right side of the pavement, contending that it was the driver's duty under the law to have lights that would enable him to see any person or object on the highway straight ahead of such motor vehicle for a distance of 200 feet." The court held that the driver of the car in which appellee was riding was not guilty of contributory negligence as a matter of law, and that the section of the statute providing for lights which would disclose an object 200 feet ahead, was not intended to apply to such unusual conditions. The court, continuing, said: "While the truck was so standing, and during a hard downpour of rain, an automobile approached from the west, with its lights, of course, shining through the rain. We do not need to tell drivers of automobiles of the blinding effect of such a situation, and of the difficulty of seeing objects in front under such circumstances. There is hardly a doubt that had the tail-light with its red light been exposed, it would have prevented the accident. . . ."

That a correct result was reached in that case can hardly be doubted, although it is clear that, under the circumstances disclosed, the driver of the car was not able to see an object as large or larger than a man for a distance of 200 feet ahead. It must therefore logically follow that one who drives at night at a speed which will permit him to observe ordinary signals of danger and obstruction, which would ordinarily and naturally be seen by a reasonably prudent person in time to stop without injury, cannot rationally be charged with negligence contributing to a collision

because he failed to see and avoid a collision with an object which a reasonably prudent person would not anticipate or expect to find in his path. And an automobile parked in the highway without lights must be considered such an object.

The question of whether or not the court erred in striking out the second paragraph of answer of Helen Opple involves the construction of certain provisions of the Civil Code, concerning which there seems to have been some confusion. Section 2-1015, Burns 1933, §119, Baldwin's 1934, provides: "The answer shall contain: First. A denial of each allegation of the complaint controverted by the defendant. Second. A statement of any new matter constituting a defense, counter-claim or set-off, in plain and concise language."

Section 2-1016, Burns 1933, §120, Baldwin's 1934, provides: "A set-off shall be allowed only in actions for money-demands upon contracts, and must consist of matter arising out of debt, duty or contract, liquidated or not, held by the defendant at the time the suit was commenced, and matured at or before the time it is offered as a set-off."

Section 2-1018, Burns 1933, §122, Baldwin's 1934, provides: "A counter-claim is any matter arising out of or connected with the cause of action which might be the subject of an action in favor of the defendant, or which would tend to reduce the plaintiff's claim or demand for damages."

Appellee, in support of the court's action, asserts that "an independent tort cannot be counter-claimed against another tort," and cites in support of his position, *L. S. & M. S. Ry. Co.* v. *Van Auken* (1891), 1 Ind. App. 492, 27 N. E. 119, and *Standley* v. *Northwestern Mutual Life Insurance Co.* (1884), 95 Ind. 254.

The first case cited involved an action against a railroad for killing a cow. The defendant filed a counterclaim alleging that the cow was negligently permitted to run at large and to wander on to appellant's railroad track in the nighttime, when, without appellant's fault, the cow was run upon and killed by the engine of appellant; that the engine was damaged thereby. The court said (p. 494): "The general rule is that tort cannot be made to constitute a defense, either by way of set-off or counter-claim. *Lovejoy* v. *Robinson*, 8 Ind. 399; *Shelly* v. *Vanarsdoll*, 23 Ind. 543; *Terre Haute, etc., R. R. Co.* v. *Pierce*, 95 Ind. 496; *Avery* v. *Dougherty*, 102 Ind. 443"; and concludes (p. 495): "If the cow was killed because of the negligence of the appellant, that was one tort, while if the cow, because of the negligence of the appellee, wandered on to the railroad track at a point where she had no right to be, that would be another and different tort." But it is clear that negligence without injury does not constitute an actionable tort. The injury to the cow and to the engine arose out of the same situation. The plaintiff's cause of action was based upon the injury to his cow and arose out of defendant's engine striking the cow, and so did defendant's cause of action which it sought to assert by its answer. It is true that damages arising out of one tort may not be set off against the liability for damage arising out of another. But no such situation arises in such a case. If both were negligent neither can recover. Plaintiff's right to damages was dependent upon the defendant's negligence and his own lack of negligence. Recovery by defendant on its cross-action was dependent upon negligence upon the part of the plaintiff and no negligence upon its own part. All of the facts pertinent to the establishment of the defendant's counter-claim were equally pertinent as a defense against the

plaintiff's action, and vice versa. The provisions of the Code were designed to avoid a multiplicity of actions. The right to plead a set-off is expressly limited to actions *ex contractu*, and, by a familiar rule of construction, we are required to conclude that the counter-claim is not so limited since there is no limitation in the statute, and we see no reason why defendant's right to recover damages should not be settled in the same action in which plaintiff asserts a right to damages against defendant, when both claims involve a determination of the same questions of fact and a consideration of the same evidence, whether or not a cross-action is involved.

An investigation of the authorities cited and relied upon in the case quoted from discloses that in the case of *Lovejoy* v. *Robinson, supra,* the defendant, by his cross-action, confesses liability for the tort sued on, but sought to set off against it damages arising from the plaintiff's tortuous action against him. This set-off obviously would not lie. *Shelly* v. *Vanarsdoll, supra,* involved a similar situation. The court said (p. 545): "Trespasses cannot be made to compensate each other by any form of pleading; and the fact that one trespass may be consequent upon another does not so connect them that they may be blended in the same action." In *Avery* v. *Dougherty, supra,* the landlord had sued for rent, and the defendant tenant sought to set off against the demand an action for damages for trespass. Again set-off is involved, and not counter-claim.

The second case cited by appellee in support of his position, *Standley* v. *Northwestern Mutual Life Insurance Co., supra,* is entirely consistent with the views we have expressed.

It was error to strike appellant's counter-claim from the files, but, since through the counter-claim she sought

to recover for injuries arising out of the collision, and since she was permitted to introduce all evidence in her defense which would have been available under her counter-claim, and since upon this evidence the jury found, not only by its general verdict, but upon interrogatories submitted, that her own negligence was the proximate cause of the collision which resulted in her injuries, she could not have recovered in any event, and the error was harmless.

Judgment affirmed.