Larry J. SMITH, Appellant–Plaintiff,

v.

Charles C. BEATY and Peake, Inc., Appellees–Defendants.

No. 47A01–9312–CV–415.

Court of Appeals of Indiana, First District.

Aug. 29, 1994.

Brad Bough, Modesitt & Bough, Terre Haute, for appellant.

Kevin C. Schiferl, Nelson D. Alexander, Locke Reynolds Boyd & Weisell, Indianapolis, for appellees.

NAJAM, Judge.

## STATEMENT OF THE CASE

Larry J. Smith appeals from the trial court's ruling on a motion for judgment on the evidence in his negligence action against Charles C. Beaty and Peake, Inc. (collectively "Beaty"). Smith's action arose out of a collision between a semi-tractor trailer, operated by Beaty in the course and scope of his employment with Peake, and a United Parcel Service van, operated by Smith. Beaty moved for judgment on the evidence at the conclusion of Smith's case-in-chief in a jury trial. The trial court granted the motion, dismissed the jury and entered a general judgment against Smith. Smith appeals and Beaty cross-appeals.[1] Both raise the following issue for our review:

> Whether the trial court properly granted Beaty's motion for judgment on the evidence.

We reverse and remand.

## FACTS

At approximately 4:30 a.m. on July 3, 1990, Larry Smith was driving a United Parcel Service van on State Road 60 in Lawrence County when one of the tires on the right side of his van blew out. State Road 60 has two lanes and is relatively flat at this location. As the tire burst, the van veered off the right side of the roadway. Smith slowed the vehicle and attempted to return it to the roadway but the van rolled over twice. It came to rest upside down in the eastbound lane of traffic with the nose of the van pointed in a northeasterly direction.

Subsequently, Marti Wells[2] approached in her vehicle and stopped at the accident scene. Smith asked Wells for help and told her that he could not get out of the van. Because the van was upside down, Smith was trapped in the driver's seat by his lap belt and shoulder harness which would not release due to his weight hanging from the seat. Wells moved her vehicle behind Smith's van and parked it facing west in the middle of the road.

As Wells stepped out of her truck to help Smith, a semi-tractor trailer approached from the west on State Road 60. The semi was driven by Charles Beaty, who was employed by Peake, Inc. Beaty attempted to avoid Smith's van by swerving into the other lane, but the semi collided with Smith's van and then with Wells' truck. The van spun and twisted before it came to rest on its side. The impact from the collision caused Smith to slip farther down into the driver's seat and enabled him to put his feet on the passenger side door and to extricate himself from his seatbelt. Smith climbed out of the van through the windshield and found Wells lying in the roadway.

Meanwhile, Leon Williams had heard Smith's van crash from his home, which was located approximately 150 to 175 feet from the point where Smith's vehicle came to rest. Williams walked approximately 75 feet toward Smith's van so that he could look over an embankment at the vehicle below. He

---

1. Beaty purports to bring a cross-appeal, but he has mislabeled an argument as a cross-appeal. Beaty argues that even had Smith established negligence on his part, Smith failed to present evidence that his injuries were proximately caused by Beaty's negligence. Beaty's argument is not a cross-appeal which raises a new issue but is an assertion of alternative grounds upon which the judgment of the trial court may be sustained.

2. It appears from the record that sometime after the accident Wells was married and that on the date of trial her last name was Albertson. In their briefs the parties refer to her as Wells, and we will follow their example in our discussion.

began to return home to call an ambulance when he heard Beaty's semi approaching. Williams then witnessed the collision between Beaty's semi and Smith's van.

Smith was hospitalized for three days and treated for five fractured ribs. As a result of his rib injuries, Smith suffers from a condition known as pseudo-arthrosis which continues to limit his physical activities. We will state additional facts in our discussion as needed.

## DISCUSSION AND DECISION

### Standard of Review

 In reviewing a trial court's .ruling on a motion for judgment on the evidence, we apply the same standard as the trial court and look only to the evidence and reasonable inferences most favorable to the non-moving party. *Clark v. Wiegand* (1993), Ind., 617 N.E.2d 916, 918. When the defendant moves for judgment on the evidence at the close of the plaintiff's evidence in a jury trial, the motion should be granted only where an issue in the case or an essential element of the claim is not supported by sufficient evidence. *See* Ind.Trial Rule 50(A); *Daub v. Daub* (1994), Ind.App., 629 N.E.2d 873, 877, *trans. denied.* Put another way, the court should withdraw the issues from the jury only if there is a complete failure of proof on at least one essential element of the plaintiff's case. *Johnson v. Naugle* (1990), Ind. App., 557 N.E.2d 1339, 1342. If there is any probative evidence or reasonable inferences to be drawn from the evidence or if there is evidence allowing reasonable people to differ as to the result, judgment on the evidence is improper. *Van Bree v. Harrison County* (1992), Ind.App., 584 N.E.2d 1114, 1116, *trans. denied.*

### Negligence

Smith contends that the trial court erred when it granted Beaty's motion for judgment on the evidence because he presented enough evidence on each element of his negligence claim to allow the case to proceed to the jury. The tort of negligence is comprised of three elements: 1) a duty on the part of the defendant in relation to the plaintiff; 2) a failure

by the defendant to conform its conduct to the requisite standard of care; and 3) an injury to the plaintiff proximately caused by the failure. *Fawley v. Martin's Supermarkets, Inc.* (1993), Ind.App., 618 N.E.2d 10, 12, *trans. denied.* Applying the above-stated standard of review, we must look to the evidence most favorable to Smith and determine whether there is evidence of probative value, or reasonable inferences to be drawn from that evidence, on each element of Smith's negligence claim.

### A. Duty

 The parties do not dispute that, as a motorist, Beaty owed Smith a duty to maintain a proper lookout, to use due care to avoid a collision and to maintain his semi under reasonable control. *See Schultz v. Hodus* (1989), Ind.App., 535 N.E.2d 1235, 1238, *trans. denied.* There was sufficient evidence that Beaty owed Smith a duty.

### B. Breach of Duty

 Beaty disputes whether he breached the duty he owed Smith. Beaty maintains that Smith failed to produce sufficient evidence that he breached the requisite standard of care because Smith introduced no evidence that Beaty failed to maintain a proper lookout or did not use due care to avoid a collision and maintain his semi under reasonable control. Smith, however, asserts that he presented sufficient evidence "to allow a reasonable fact finder to differ as to whether the care exercised by the defendants with respect to speed and the visibility of objects on the road was reasonable." Brief of Appellant at 15.

The evidence most favorable to Smith reveals that the accident occurred in the early morning at approximately 4:30 a.m. when the sky was not completely light, but was described as a "gray dawn" or "predawn." Record at 396 and 689. After Smith lost control of his vehicle and his van rolled over, it came to rest upside down, with its nose partially obstructing the eastbound lane of State Road 60. On that particular stretch of road, the westbound lane of the road comes out of a curve into a straightaway approximately four-tenths of a mile long before the

road curves again. Smith's van was located in the straightaway between the two curves.

Smith testified that one of his vehicle's headlights was still operating and was shining into the trees on the hill north of the roadway. Leon Williams testified that Smith's vehicle could be seen without difficulty in the roadway, and he and Smith both stated that at least two westbound vehicles passed the accident scene before Beaty's semi arrived. Further, Wells testified that after she arrived on the scene, she parked her truck in the center of the roadway and positioned it behind Smith's van so that one of her headlights shone down the roadway to the west and the other shone onto Smith's van. Wells also activated the emergency flashers on her truck. Wells saw nothing in the roadway that would block or obstruct the view of her truck from vehicles proceeding in an easterly direction.

Finally, Williams testified that he observed Beaty's semi-tractor trailer as it approached the accident scene eastbound on State Road 60. Williams stated it appeared that Beaty was looking down into his outside rearview mirror as he approached the scene and that, a few seconds before the impact, Beaty looked up and swerved the semi into the other lane.

■ A motorist upon a highway regularly used by the public is not required to anticipate extraordinary hazards, nor to constantly expect and search for unusual dangers. *Opple v. Ray* (1935), 208 Ind. 450, 459, 195 N.E. 81, 84. However, a motorist is charged with the duty of exercising ordinary care to observe dangers and obstructions and is chargeable with notice of obstructions that a person of ordinary prudence would reasonably be expected to observe. *Id.* To that end, keeping a proper lookout has been defined to mean the duty to see that which is clearly visible or that which in the exercise of due care would be visible. *Thornton v. Pender* (1978), 268 Ind. 540, 544, 377 N.E.2d 613, 617. Generally, whether under the facts of a case a driver complied with the standard of ordinary care to keep a lookout for objects in the road is a question for the jury. *See id.; Cushman Motor Delivery Co. v. McCabe* (1941), 219 Ind. 156, 170, 36 N.E.2d 769, 774;

*Bd. of Comm'rs v. Briggs* (1975), 167 Ind. App. 96, 134, 337 N.E.2d 852, 875.

Here, Smith presented evidence that the sky was not completely dark and that the accident scene was clearly visible. Witnesses testified that Smith's vehicle could be seen without difficulty in the roadway, at least one of Wells' headlights was pointed down the roadway to the west, Wells' flashers were operating and at least two other vehicles passed by the scene without difficulty. There was also testimony that Beaty was looking down into his rearview mirror and only looked up a few seconds before the impact. Thus, a question of fact exists concerning whether Beaty breached his duty to keep a proper lookout. When all of the evidence is viewed most favorably to Smith, we are unable to conclude that there is no probative evidence supporting the breach of duty element of Smith's negligence claim.

### C. Proximate Cause

■ Beaty maintains that Smith failed to present any expert evidence that his injuries were proximately caused by Beaty's actions and/or omissions. Smith admits he did not present expert testimony to a reasonable degree of certainty that the semi's impact with his van was the proximate cause of his injuries, but he contends that he presented sufficient objective evidence that his injuries were caused by the semi's impact to allow the submission of the case to the jury.

■ Causation, or the requirement of a reasonable connection between a defendant's conduct and the damages which a plaintiff has suffered, is an essential element in a negligence action. *Daub v. Daub* (1994), Ind. App., 629 N.E.2d 873, 877, *trans. denied.* "This element requires, at a minimum, causation in fact—that is, that the harm would not have occurred 'but for' the defendants' conduct." *Id.* In order for a plaintiff to carry his burden of proof, he must present evidence of probative value based on facts, or inferences to be drawn from the facts, establishing both that the wrongful act was a cause in fact of the occurrence and that the occurrence was a cause in fact of his injury. *See id.* The plaintiff's burden may not be carried with evidence based merely upon

supposition or speculation. *Palace Bar, Inc. v. Fearnot* (1978), 269 Ind. 405, 409, 381 N.E.2d 858, 861.

In this case, Smith presented expert medical testimony by Dr. J.F. Pangan, his treating physician. However, Dr. Pangan testified that he could not say to a reasonable degree of medical certainty whether the rolling of the van or the impact of the semi caused Smith's rib injuries. On cross-examination, Dr. Pangan stated that he could only speculate as to which event caused the injuries. Beaty argues that the question of which impact caused Smith's injuries was a scientific question necessarily dependent upon expert medical testimony. According to Beaty, the trial court properly entered judgment on the evidence because Smith failed to submit any evidence "which would provide the jury with an option other than pure speculation." Brief of Appellees at 13.

■ Beaty misstates Smith's burden of making a prima facie showing of causation to submit his case to the jury. Causation in a negligence case need not always be proven by expert testimony. *See Barrow v. Talbott* (1981), Ind.App., 417 N.E.2d 917, 923 n. 3. Causation may be proven by circumstantial evidence if the evidence has sufficient probative force to constitute a basis for a legal inference rather than mere speculation. *Id.* When the issue of causation is within the understanding of a lay person, testimony of an expert witness is not necessary. *See Daub*, 629 N.E.2d at 878 (causal connection between permanent condition, injury and pre-existing condition ordinarily a complicated medical question requiring expert opinion).

Here, while Dr. Pangan was unable to say to a reasonable degree of certainty which event caused Smith's injuries, Smith was able to testify that he felt severe pain only *after* the impact of the semi. Smith testified that before the van was struck by the semi, he was able to yell for assistance and to slip his left arm through the shoulder harness in an attempt to free himself from the confines of the seatbelt, both without experiencing any rib pain. Smith further testified that after the impact of the semi, he experienced a great deal of pain which he believed was attributable to broken ribs. He also stated that he was familiar with the pain associated with broken ribs because he had broken ribs on his right side years before.

■ We conclude in this case that a lay person would be competent to draw inferences from these facts and determine that Beaty's conduct was *a* cause of Smith's injuries. Dr. Pangan's inability to determine whether the rolling of the van or the impact of the semi caused Smith's injuries was not fatal to Smith's case. The defendant's act need not be the sole cause of the plaintiff's injuries. *Lucas v. Dorsey Corp.* (1993), Ind.App., 609 N.E.2d 1191, 1199, *trans. denied.* Many causes may produce the injurious result. *Id.* The essential question is whether the defendant's wrongful act is one of the proximate causes rather than a remote cause. *Id.* From Smith's own testimony, the jury could have inferred causation. *See Barrow*, 417 N.E.2d at 922 (appellee competent to testify about twitch in eye that developed after auto accident although doctor testified he could only guess twitch developed as result of severing facial nerve in accident); *Indiana Limestone Co. v. Ridge* (1929), 89 Ind.App. 689, 691, 167 N.E. 617, 617 (because appellee was testifying to a fact based upon own experience, he was competent to testify that as a result of an injury to his foot, the impairment of the foot was 75 percent).

■■ It is true that standing alone, an opinion which lacks reasonable probability is not sufficient evidence by itself to support a verdict. *Noblesville Casting Division of TRW, Inc. v. Prince* (1982), Ind., 438 N.E.2d 722, 731. However, "an expert's opinion that something is 'possible' or 'could have been' may be sufficient to sustain a verdict or award" when rendered in conjunction with other, probative evidence establishing the material factual question to be proved. *Id.* Accordingly, while Dr. Pangan could not conclude to a reasonable degree of certainty which of these two events caused Smith's injuries, such an expert opinion was not essential to establish causation.

Dr. Pangan was able to testify that, in his opinion, an individual with fractured ribs similar to Smith's fractured ribs would experi-

ence severe pain as a result of the fractures if he tried to move his arms or lift his weight in the way that Smith had when he attempted to free himself before the impact of the semi. His testimony was not the only evidence presented on causation. As shown above, Smith's testimony concerning the time when he first felt pain in his ribs established the causal link between the semi's impact with the van and his injuries. Wells corroborated Smith's testimony. She testified that when she first arrived on the scene, Smith asked her to help him get out of the van, but he made no complaints of pain and did not indicate he was injured in any way. Wells recalled that when she spoke with Smith after the van had been struck by the semi, Smith appeared to be in a great deal of pain, was holding his ribs and told her that he thought his ribs were broken. Finally, Smith's x-rays taken after the accident identified multiple left rib fractures, and entries in Smith's Discharge Summary and History and Physical Exam Report, made by Dr. R.S. Wright at Bedford Medical Center, stated that Smith suffered the major injuries to his chest after the second impact.

We conclude that Smith's testimony about his injuries, together with the testimony of Wells and Dr. Pangan and Smith's medical records, established a prima facie showing that Smith's rib injuries were caused by the impact from Beaty's semi. Indeed, Smith and Wells' lay report of the facts went beyond a mere hypothesis of causation but was sufficient for the jury to infer without resort to speculation that Beaty caused Smith's injuries. *Cf. Daub,* 629 N.E.2d at 878 (plaintiff's testimony established nothing more than facts which made up her allegations).[3] Smith carried his burden by presenting evidence of probative value that Beaty's breach of the duty to keep a proper lookout, which resulted in the semi's collision with the van, was a cause in fact of his injuries.

Beaty also asserts that Smith failed to present a prima facie case for causation because it was Smith who breached a duty to maintain his vehicle under control. Beaty's argument misses the mark. In effect, Beaty's position is that Smith's own negligent driving caused his injuries. However, even if the evidence established that Smith's own negligence was a cause of his injuries, Smith was not necessarily precluded from recovery under Indiana's Comparative Fault Act. *See* IND.CODE § 34–4–33–4(a). A plaintiff is barred from recovery only if his fault is greater than the fault of all persons whose fault proximately contributed to his damages. *Id.*

The apportionment of fault under the Comparative Fault Act is uniquely a question of fact to be decided by the jury. *McKinney v. Public Serv. Co. of Indiana* (1992), Ind.App., 597 N.E.2d 1001, 1008, *trans. denied.* The question of causation is likewise usually inappropriate for summary disposition because it often requires a weighing of disputed facts. *VanValkenburg v. Warner* (1992), Ind.App., 602 N.E.2d 1046, 1049, *trans. denied.* Here, as shown above, Smith made a prima facie showing that Beaty's conduct was a cause of his injuries. The evidence concerning Smith's fault does not support only the conclusion that Smith was more than 50% at fault. *See McKinney,* 597 N.E.2d at 1008. Therefore, judgment on the evidence for Beaty was not warranted on the questions of causation and comparative fault.

## CONCLUSION

From our review of the evidence, we cannot say there was a complete failure of proof on any element of Smith's negligence claim. Therefore, we hold that Beaty's motion for judgment on the evidence was improperly granted by the trial court. The judgment of

---

**3.** Beaty analogizes the facts of this case to the facts in *Daub.* In *Daub,* the only evidence presented at trial was the testimony of the plaintiff and defendant. Mrs. Daub had significant preexisting conditions and subsequent injuries. However, she failed to present any expert testimony to establish causation as is ordinarily required under such circumstances. *Daub,* 629 N.E.2d at 877–78. While Mrs. Daub's testified as

to the cause of her injuries, unlike in this case there was no corroborating lay testimony to support her claims. Indeed, Mrs. Daub's testimony so lacked probative value that the distinctions between Mrs. Daub's various back problems were "not objectively discernible, even to Mrs. Daub." *Daub,* 629 N.E.2d at 878. We find the facts of *Daub* inapposite.

the trial court is reversed and we remand with instructions to grant a new trial.

Reversed and remanded.

BAKER and SULLIVAN, JJ., concur.