FILED

May 21 2018, 7:37 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANTS

Adam J. Sedia
Hoeppner, Wagner & Evans, LLP
Merrillville, Indiana

ATTORNEYS FOR APPELLEES SARA L.
RITZ AND PORTER COUNTY DRUG
TASK FORCE

Crystal G. Rowe
Alyssa C.B. Cochran
Kightlinger & Gray, LLP
New Albany, Indiana

Galen A. Bradley
Kightlinger & Gray, LLP
Merrillville, Indiana

ATTORNEY FOR APPELLEE TOWN OF
CHESTERTON

Thomas Waggoner
Straub, Seaman & Allen, PC
St. Joseph, Michigan

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Sheila Gonzalez and Rod Gonzalez, <br><br> *Appellants-Plaintiffs,* <br><br> *v.* <br><br> Sara Ritz, Northern Indiana Public Service Company, Porter | May 21, 2018 <br><br> Court of Appeals Case No. 64A04-1712-CT-2850 <br><br> Appeal from the Porter Superior Court <br><br> The Honorable Roger V. Bradford, Judge <br><br> Trial Court Cause No. 64D01-1410-CT-8648 |

County Drug Task Force, and
Town of Chesterton,

*Appellees-Defendants.*

**Bradford, Judge.**

# Case Summary

In July of 2014, Sheila Gonzalez was riding her bicycle on a trail with her two children when the trio came to an intersection with a road. When Sheila attempted to cross the road, she was struck by a vehicle driven by Sara Ritz, a member of the Chesterton Police Department ("the Department") and Porter County Drug Task Force ("the Task Force"). Gonzalez and her husband Rod sued Ritz, the Task Force, and the Town of Chesterton ("the Town") for negligence. The Task Force moved for summary judgment on the basis that there was no genuine issue of material fact that Sheila had been contributorily negligent as a matter of law. The Town joined the Task Force's motion, and the trial court entered summary judgment in favor of the Task Force and the Town (collectively, "Appellees"). The Gonzalezes appeal, contending that the designated evidence does not inevitably lead to the inference that Sheila was contributorily negligent. Because we agree, we reverse the trial court's grant of summary judgment in favor of Appellees and remand for trial.

# Facts and Procedural History

[2] In July of 2014, Ritz was employed as a detective for the Department and served as a member of the Task Force. On July 9, 2014, Ritz was in Portage, Indiana, conducting an investigation within the course and scope of her employment. Ritz was stopped at the four-way intersection of Swanson Road and Aspen Road before she proceeded east down Lute Road.

[3] Meanwhile, Sheila and her children Vanessa and Carter had been riding their bicycles on the Prairie Duneland Trail ("the Trail") nearby. The trio approached the Trail's intersection with Lute Road, which had a stop sign directing bicyclists to stop and yield to traffic on Lute Road. No trees, shrubbery, tall grass, weather, or other obstructions prevented bicyclists from seeing traffic on Lute Road that day. When the three Gonzalezes reached the stop sign at the Lute Road intersection, they came to a complete stop. Vanessa crossed Lute Road without incident and waited on the other side.

[4] Carter and Sheila remained stopped on the Trail while approximately nine to ten vehicles passed on Lute Road. Sheila looked right then left, told Carter that "it was clear, we can go[,]" and started to pedal across Lute Road. Appellant's App. Vol. II p. 48. Carter agreed with Sheila's assessment that "the traffic became clear on Lute Road[,]" and, after looking both ways himself, started to follow Sheila, trailing a few feet behind. Appellant's App. Vol. II p. 43. As Carter started to follow Sheila across the street, he looked to his right and noticed Ritz's vehicle approaching. Carter stopped his bicycle and yelled at Sheila to stop. Carter first saw Ritz's vehicle approximately one second before it struck Sheila.

[5] According to Carter, the vehicle appeared to be going faster than all of the other vehicles that had passed. Vanessa told police at the scene that Ritz's vehicle was going "f***** fast[,]" Appellant's App. Vol. II p. 63, and later opined that Ritz was driving too fast. Although Sheila could not recall anything about the accident, she testified that it was her practice while riding a bicycle to stop at all intersections and look both ways before crossing.

[6] On February 4, 2016, the Gonzalezes filed their first amended complaint. The Gonzalezes alleged, *inter alia*, that the Appellees were vicariously liable for the alleged negligence of their employee, Ritz.[1] On April 12, 2016, the Town filed its answer to the Gonzalezes' amended complaint, and on April 18, 2016, the Task Force filed its answer. On May 17, 2017 the Task Force moved for summary judgment. The Town joined the Task Force's summary-judgment motion and filed its own on July 10, 2017.

[7] On September 25, 2017, the trial court denied the Gonzalezes' motion to file a belated response to the Appellees' summary-judgment motion, held a hearing (at which the Gonzalezes were permitted to present argument), and granted summary judgment in favor of the Appellees. The Gonzalezes filed a motion to correct error, which motion the trial court denied.

---

[1] Sheila was knocked from her bicycle and into a utility pole allegedly owned and maintained by Appellee-Defendant Northern Indiana Public Service Company ("NIPSCO"). The Gonzalezes alleged that NIPSCO, who does not participate in this appeal, had negligently maintained the pole. The Gonzalezes also acknowledge that Ritz, who also does not participate in this appeal, cannot be held personally liable for the consequences of any negligent acts she may have committed in this case.

# Discussion and Decision

[8]     Although review of a trial court's ruling on a motion to correct error is generally for an abuse of discretion, where the issue raised is purely a question of law, the standard of review is *de novo*. *City of Indpls. v. Hicks*, 932 N.E.2d 227, 230 (Ind. Ct. App. 2010), *trans. denied*. On review of a trial court's decision to grant or deny summary judgment, we must determine whether there is a genuine issue of material fact that precludes summary judgment and whether the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Carie v. PSI Energy, Inc.*, 715 N.E.2d 853, 855 (Ind. 1999). Once the moving party has sustained its initial burden of proving the absence of a genuine issue of material fact and the appropriateness of judgment as a matter of law, the party opposing summary judgment must respond by designating specific facts establishing a genuine issue for trial. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014).

[9]     A fact is "material" if its resolution would affect the outcome of the case and "genuine" if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences. *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009) (quoting Ind. T.R. 56(C)). The non-movant may not rest upon the bare allegations made in the pleadings, but must respond with affidavits or other evidence setting forth specific facts showing that genuine issues are in dispute. *Willsey v. Peoples Fed. Sav. & Loan Ass'n. of E. Chicago, Ind.*, 529 N.E.2d 1199, 1205 (Ind. Ct. App. 1988).

> In reviewing the propriety of a ruling on a motion for summary judgment, we apply the same standards as the trial court and review all the pleadings, depositions, admissions, answers to interrogatories, and any affidavits designated to the trial court in the light most favorable to the nonmovant. The movant bears the burden of proving the propriety of summary judgment, and all rational assertions of fact and reasonable inferences to be resolved therefrom are deemed to be true and are viewed in the nonmovant's favor.

*Lindsey v. DeGroot*, 898 N.E.2d 1251, 1256 (Ind. Ct. App. 2009) (citation omitted). In ruling on a motion for summary judgment, the Court may consider only designated evidence that would be admissible at trial. *See* Ind. T.R. 56(C), (E); *see also Kronmiller v. Wangberg*, 665 N.E.2d 624, 627 (Ind. Ct. App. 1996), *trans. denied*.

[10] In their appeal from the grant of summary judgment, the Gonzalezes argue that the Task Force and the Town failed to establish that Sheila was contributorily negligent as a matter of law. Generally, in Indiana actions for negligence, a plaintiff's contributory fault does not bar recovery unless it exceeds fifty percent of the total fault. *See* Ind. Code §§ 34-51-2-5, -6. Because the Indiana Comparative Fault Act expressly excludes application to governmental entities, however, the common-law defense of contributory negligence remains available as a bar for liability for defendants such as the Appellants. *See* Ind. Code § 34-51-2-2 ("This chapter does not apply in any manner to tort claims against governmental entities or public employees[.]"). So, even a slight degree of negligence on the part of Sheila, if proximately contributing to her claimed

damages, will operate as a complete bar to the Gonzolazes' action for damages against the Appellees.

[11] A plaintiff is contributorily negligent when the plaintiff's conduct "falls below the standard to which he should conform for his own protection and safety. Lack of reasonable care that an ordinary person would exercise in like or similar circumstances is the factor upon which the presence or absence of negligence depends." *Jones v. Gleim*, 468 N.E.2d 205, 207 (Ind. 1984); *see also Hundt v. La Crosse Grain Co.*, 446 N.E.2d 327, 329 (Ind. 1983). Put another way, "[c]ontributory negligence is the failure of a person to exercise for his own safety that degree of care and caution which an ordinary, reasonable, and prudent person in a similar situation would exercise." *Brown v. N. Ind. Publ. Serv. Co.*, 496 N.E.2d 794, 798 (Ind. Ct. App. 1986). Contributory negligence is generally a question of fact and is not an appropriate matter for summary judgment "if there are conflicting factual inferences." *Butler v. City of Peru*, 733 N.E.2d 912, 917 (Ind. 2000). "However, where the facts are undisputed and only a single inference can reasonably be drawn therefrom, the question of contributory negligence becomes one of law." *Jones*, 468 N.E.2d at 207.

[12] As an initial matter, the Appellees argued below, and argue here, that Sheila is presumed to have been contributorily negligent for failing to comply with a safety statute or statutes. *See, e.g.*, *Davison v. Williams*, 242 N.E.2d 101, 105 (Ind. 1968) ("We believe that the wisest course for the courts of Indiana to take in the adjudication of a suit involving negligence by violation of a safety regulation is to treat plaintiff's proof of defendant's violation of the safety

regulation as creating a rebuttable presumption of negligence."). Pursuant to Indiana Code section 9-21-11-2, "[a] person riding a bicycle or operating a Class B motor driven cycle upon a roadway has all the rights and duties under this article that are applicable to a person who drives a vehicle," and Appellees draw our attention to two specific safety statutes that they claim Sheila violated. The duties imposed under Indiana Code article 9-21 include that a driver must stop at an intersection where there is a stop sign erected, proceed cautiously, and yield to vehicles that are not required to stop, Ind. Code § 9-21-8-32, and a person may not start a vehicle that is stopped until the movement can be made with reasonable safety. Ind. Code § 9-21-8-23. Given that the statutes cited above require one to "proceed cautiously" after stopping at a stop sign and not move a vehicle until it can be done with "reasonable safety[,]" it is clear that one must essentially be found negligent to trigger the presumption of negligence, rendering the presumption inapplicable and superfluous, at least in this case and to the statutes cited by Appellee. In short, we reject Appellees' assertion that a presumption of negligence stemming from the violation of a safety statute has any part to play in this case.[2]

---

[2] Appellees also cite to Indiana Code section 9-21-8-33(b) for the proposition that "a collision is considered 'prima facie evidence of the person's failure to yield the right-of-way'" and seem to suggest that it should apply to Sheila. Appellee's Br. p. 21. Subsection (b)'s application is not as broad as Appellants would have us believe, however. The full text of subsection (b) is as follows: "If a person who drives a vehicle is involved in a collision with a pedestrian in a crosswalk or a vehicle in the intersection *after driving past a yield sign without stopping*, the collision is considered prima facie evidence of the person's failure to yield the right-of-way." (Emphasis added). Because there is no evidence whatsoever that Sheila either rode her bicycle past a yield sign or did so without stopping, subsection (b) simply does not apply in this case. We urge counsel for Appellees to exercise more care in the future so as to avoid mischaracterizing authority in submissions to the court.

[13] That said, this court has noted that "'The drivers of automobiles and the drivers of other vehicles, including bicycles, owe a duty to others lawfully using the public streets and highways, and are required to exercise due care in the use of their vehicles not to injure others.'" *Smith v. Indpls.*, 136 Ind. App. 616, 621, 199 N.E.2d 722, 725 (1964) (quoting *Luther* v. *State*, 177 Ind. 619, 623, 98 N.E. 640, 641 (1912)). That duty of care should not be understood, however, to impose unreasonable demands on motorists or bicyclists:

> A motorist upon a highway regularly used by the public is not required to anticipate extraordinary hazards, nor to constantly expect and search for unusual dangers. *Opple v. Ray* (1935), 208 Ind. 450, 459, 195 N.E. 81, 84. However, a motorist is charged with the duty of exercising ordinary care to observe dangers and obstructions and is chargeable with notice of obstructions that a person of ordinary prudence would reasonably be expected to observe. *Id*. To that end, keeping a proper lookout has been defined to mean the duty to see that which is clearly visible or that which in the exercise of due care would be visible. *Thornton v. Pender* (1978), 268 Ind. 540, 544, 377 N.E.2d 613, 617. Generally, whether under the facts of a case a driver complied with the standard of ordinary care to keep a lookout for objects in the road is a question for the jury. *See id*.; *Cushman Motor Delivery Co. v. McCabe* (1941), 219 Ind. 156, 170, 36 N.E.2d 769, 774; *Bd. of Comm'rs v. Briggs* (1975), 167 Ind. App. 96, 134, 337 N.E.2d 852, 875.

*Smith v. Beaty*, 639 N.E.2d 1029, 1033 (Ind. Ct. App. 1994).

[14] While the Gonzalezes implicitly concede that there is designated evidence from which a jury could find that Sheila was contributorily negligent, they argue that the designated evidence would also permit a finding that she was not. Viewing

the designated evidence in a light most favorable to the Gonzalezes, we conclude that they are correct.

[15] Although Sheila testified that she could not remember the accident, she also testified that it was her practice while riding a bicycle to always stop at all intersections and look both ways before crossing. (Appellant's App. Vol. II 95). The Gonzalez children's testimony is consistent with Sheila's on this point. Carter testified that Lute Road was clear and that Sheila came to a complete stop, looked right then left, and told him that "it was clear, we can go" before starting across. Appellant's App. Vol. II p. 48. As for why Sheila might not have seen Ritz's vehicle or, perhaps, saw it but underestimated the threat it posed, Carter testified that Ritz's vehicle was traveling faster than the other traffic on the road and Vanessa testified that Ritz was driving too fast. A factfinder could possibly conclude from the above that Sheila complied with the standard of ordinary care but nevertheless failed to see the approaching Ritz, and/or incorrectly concluded that her fast-moving vehicle was too far away to pose a threat.

[16] Appellees rely on *Funston v. School Town of Munster*, 849 N.E.2d 595 (Ind. 2006), to support their position that Sheila was contributorily negligent as a matter of law. In that case, Funston was attending his son's basketball game when he sat on the top row of some bleachers. *Id.* at 599. Despite the fact that "[i]t was clearly visible that there was no back railing for spectators sitting on the top row, … Mr. Funston leaned back anyway[,]" fell, and was injured. *Id.* The Court concluded "from the undisputed facts that only a single inference can

reasonably be drawn: Mr. Funston was negligent to some degree, and this is enough to establish the common law defense of contributory negligence as a matter of law." *Id.* at 600.

[17] *Funston* is readily distinguished. In that case, Funston leaned back despite the undisputed fact that the hazard, *i.e.*, the lack of railing, was clearly visible. Here, contrary to Appellees' argument, the designated evidence does not inescapably lead to the inference that Sheila acted unreasonably in the face of a clearly-visible threat: We have already concluded that the evidence could possibly support an inference that Sheila acted reasonably but still did not see Ritz's vehicle coming, and/or realize how fast it was traveling, until it was too late. Appellees' reliance on *Funston* is unavailing.

[18] Appellees also make arguments related to alleged shortcomings of various pieces of designated evidence. Appellees contend that Sheila's testimony that she habitually stopped and looked both ways at intersections while riding her bicycle was immaterial and very likely inadmissible to boot. A person's habits can certainly be relevant to the question of how that person acted on a particular occasion. This is recognized by Indiana Rule of Evidence 406, which provides that

> [e]vidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice. The court may admit this evidence regardless of whether it is corroborated or whether there was an eyewitness.

Sheila's testimony may qualify for admissibility. At the very least, Appellees have failed to establish that it would certainly not be admissible at a trial.

[19] Appellees also contend that Carter's and Vanessa's testimony that Sheila did nothing wrong is inadmissible as opinion testimony on the ultimate legal issue of Sheila's negligence. *See* Ind. Evidence Rule 704(b) ("Witnesses may not testify to opinions concerning … legal conclusions."). Even if we assume that this is the case, we have already concluded that Sheila's testimony and Carter's and Vanessa's testimony regarding their observations could be sufficient to establish a lack of contributory negligence on Sheila's part.

[20] Appellees also contend that it is undisputed that Lute Road was not "clear" when Sheila entered it, Sheila's act of stopping before crossing Lute Road is not evidence that she kept a proper lookout for hazards, and the undisputed fact that Sheila's view was unobstructed allows only the inference that she saw Ritz's vehicle approaching. Whatever value these arguments might have if made to a jury, our job is only to evaluate the designated evidence to the extent necessary for deciding whether it generates a genuine issue of material fact, precluding summary judgment. We have concluded that it does. We reverse the trial court's entry of summary judgment in favor of the Town and the Task Force and remand for trial.

[21] We reverse the judgment of the trial court and remand with instructions.

Baker, J., and Kirsch, J., concur.