**Michelle A. McDONALD, Appellant–Plaintiff,**

v.

**James D. LATTIRE, Appellee–Defendant.**

No. 03A01–0505–CV–223.

Court of Appeals of Indiana.

March 23, 2006.

Scott C. Andrews, Coriden Law Office, LLC, Columbus, for Appellant.

Kyle M. Baker, McNeeley, Stephenson, Thopy & Harrold, Shelbyville, for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Michelle McDonald appeals the summary judgment granted in favor of James Lattire. We affirm.

### Issues

McDonald raises one issue: whether genuine issues of material fact exist such that summary judgment should not have been granted on her negligence claim. In addition to responding to McDonald's substantive issue, Lattire challenges McDonald's memorandum in opposition to summary judgment, asserting problems concerning timeliness and designation. We first examine Lattire's two related issues, then we analyze McDonald's contention.

### Facts and Procedural History

The undisputed facts reveal that on May 4, 2003, McDonald was driving her black 2001 Jeep Grand Cherokee southbound on U.S. 31. Appellant's App. at 6 (complaint), 9 (answer). At that same time, Lattire was driving his red 1994 Chevy S–10 northbound on U.S. 31. *Id.* Also at that time, Desmon Elgar was traveling in his blue 1992 Pontiac Bonneville westbound on County Road 600 South. *Id.* Elgar ran the stop sign at County Road 600 South and U.S. 31. *Id.* A collision occurred between Elgar's and Lattire's vehicles, and

immediately thereafter a collision occurred between Lattire's and McDonald's vehicles.

On September 8, 2004, McDonald filed a complaint against Lattire for damages resulting from the accident. *Id.* at 6. In her complaint, which was signed only by her counsel, McDonald "state[d] and alleg[ed]" that the accident occurred as follows:

Elgar ran the stop sign at CR 600 S, driving into the path of [Lattire] as he was traveling north on U.S. 31. Upon impact between Elgar and [Lattire], [Lattire] spun around and crossed into the south lane, directly into the path of [McDonald]. Upon impact, [Lattire's] vehicle became airborne and came to rest on it's [sic] passenger side off of the road, against a sign post and wire fence on CR 600 S, just west of U.S. 31, where it caught fire. Simultaneously, [McDonald's] vehicle traveled off of the road into a steep, grassy ditch on the west side of U.S. 31 just south of CR 600 S, where it caught fire.

*Id.* at 6–7. Lattire moved for an enlargement of time in which to answer. *Id.* at 3 (chronological case summary, "CCS"). The court granted the enlargement up to and including November 4, 2004.

Lattire filed his answer, defenses, demand for jury trial, a motion for summary judgment, and a brief in support thereof prior to November 4, 2004. *Id.* In his own affidavit, which he designated and attached to his summary judgment materials, Lattire described the accident slightly differently than McDonald had alleged in her complaint. According to Lattire's sworn affidavit, Lattire "approached the intersection of U.S. 31 and County Road 600, [Elgar] failed to yield the right of way and drove into [Lattire's] path of travel. [Elgar's] vehicle struck the right front panel of [Lattire's] vehicle." *Id.* at 16 (Lattire affidavit). Further, Lattire was traveling "under the posted speed limit of fifty-five miles per hour" and "had no opportunity to avoid this collision." *Id.* Moreover, "[a]s a result of [Elgar's] striking of [Lattire's] vehicle, [Lattire's] vehicle was spun around and forced into the southbound lane of travel on U.S. 31, where [Lattire's] vehicle collided with a vehicle driven by [McDonald]." *Id.*

A summary judgment hearing was originally scheduled for January 19, 2005. *Id.* at 3(CCS). However, on January 12, 2005, McDonald filed and the trial court granted her motion to continue the hearing to February 16, 2005, and to extend her response date up to and including February 5, 2005. *Id.* McDonald filed her memorandum in opposition to Lattire's motion for summary judgment on February 14, 2005. *Id.* at 22–33. On the day of the hearing, Lattire objected to McDonald's memorandum in opposition to Lattire's motion for summary judgment. *Id.* at 3(CCS), 34–37 (written objection), 42–44 (summary judgment hearing transcript containing oral objection).

On March 22, 2005, the trial court granted Lattire's motion for summary judgment in an order that reads in relevant part as follows:

The parties having appeared in person and by counsel, and the Court having heard argument on [Lattire's] Motion for Summary Judgment, and the Court now being duly advised in the premises hereby finds as follows:

1) [McDonald] failed to present any affidavits or sworn testimony to refute the allegations contained in [Lattire's] Motion for Summary Judgment.

2) Further [McDonald's] complaint is not verified and can not be taken as an affidavit in opposition to [Lattire's] Motion.

3) The Court is therefore left to make a determination of the existence of material factual disputes from the submission of evidence presented by [Lattire]. Ind. Tr. Rule 56(E).

4) It is the expressed desire of the Courts to resolve all disputes on the merits rather than dismissing an action based on a technicality.

5) It is clear from the facts presented to the Court, that no reasonable jury could determine that [Lattire] acted negligently because:

(a) [Lattire] violated no traffic laws;

(b) [Lattire] legally crossed into an intersection;

(c) [Lattire's] vehicle was struck by a vehicle that was acting outside the norms of proper traffic safety;

(d) That the third party caused the collision and [Lattire] had no duty, nor even an opportunity to avoid the collision.

*Id.* at 5.

### Discussion and Decision

#### *Summary Judgment Standard of Review*

A reiteration of the often-quoted summary judgment standard of review is particularly helpful in this case.

Pursuant to Rule 56(C) of the Indiana Rules of Trial Procedure, summary judgment is appropriate when there are no genuine issues of material fact and when the moving party is entitled to judgment as a matter of law. On review of a trial court's decision to grant or deny summary judgment, this Court applies the same standard as the trial court. We must determine whether there is a genuine issue of material fact requiring trial, and whether the moving party is entitled to judgment as a matter of law. *Neither the trial court nor the reviewing court may look beyond the evidence specifically designated to the trial court.*

*A party seeking summary judgment bears the burden to make a prima facie showing that there are no genuine issues of material fact and that the party is entitled to judgment as a matter of law. Once the moving party satisfies this burden through evidence designated to the trial court pursuant to Trial Rule 56, the nonmoving party may not rest on its pleadings, but must designate specific facts demonstrating the existence of a genuine issue for trial.* The court must accept as true those facts alleged by the nonmoving party, construe the evidence in favor of the nonmovant, and resolve all doubts against the moving party. For a defendant in a negligence action to prevail on a motion for summary judgment, the defendant must show that the undisputed material facts negate at least one of the elements essential to the negligence claim, or that the claim is barred by an affirmative defense. On appeal, we will assess the trial court's decision to ensure that the parties were not improperly denied their day in court. A genuine issue of material fact exists where facts concerning an issue that would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue.

*Coffman v. PSI Energy, Inc.,* 815 N.E.2d 522, 526 (Ind.Ct.App.2004) (citations omitted) (emphasis added), *trans. denied.* "Because issues of reasonable care, causation, and comparative fault are more appropriately left for determination by the trier of fact, summary judgment is rarely appropriate in negligence cases." *Daisy v. Roach,* 811 N.E.2d 862, 864 (Ind.Ct.App. 2004).

The trial court's findings and conclusions are not binding upon this court, but do facilitate appellate review and offer insight into the trial court's rationale for its decision. *Unincorporated Operating Div. of Ind. Newspapers, Inc. v. Trs. of Ind. Univ.*, 787 N.E.2d 893, 900 (Ind.Ct.App. 2003), *trans. denied.* On review, we will affirm the summary judgment if it is sustainable upon any theory or basis found in the record. *Id.; see also Cox v. Paul*, 828 N.E.2d 907, 910–11 (Ind.2005). The trial court's order granting or denying a motion for summary judgment is cloaked with a presumption of validity. *Sizemore v. Erie Ins. Exch.*, 789 N.E.2d 1037, 1038 (Ind.Ct. App.2003). A party appealing from an order granting summary judgment has the burden of persuading us that the decision was erroneous. *Id.*

## I. Timeliness of Memorandum in Opposition to Motion for Summary Judgment and Propriety of Designation

In his motion for summary judgment, Lattire "designated" (via listing) McDonald's complaint and his own verified affidavit, which he attached as evidence. Appellant's App. at 13–16. Within his memorandum in support of his motion, Lattire cited to particular paragraphs of both the complaint and his affidavit, hence specifically designating those portions. *Id.* at 17–18. McDonald did not file her memorandum in opposition to Lattire's motion for summary judgment until February 14, 2005, which was nine days after the court-ordered extension and just two days before the hearing on the motion for summary judgment. *Id.* at 3. Along with her memorandum, McDonald included her designation, which consisted of: "Paragraphs 1 through 10 of [McDonald's] Complaint for Damages and all exhibits attached thereto[.]" *Id.* No exhibits were attached to McDonald's complaint or to her memorandum in opposition to summary judgment. Stated otherwise, McDonald's re-

sponse to Lattire's motion for summary judgment was a late-filed rehash of her complaint with no opposing "evidence" designated.

At the summary judgment hearing, rather than disputing the tardiness of McDonald's filing, her counsel argued:

> The gist of trial rule 56 is basically to preclude someone coming in and designating evidence at a, right before the hearing, and in this case, we're not designating any other evidence other than what [Lattire] has designated, so basically, our brief is totally argument based upon the evidence that's already been designated..... And, basically, the complaint, we believe the complaint should be, all the issues, basically in the complaint are deemed, should be deemed true, basically. And, if you take that, and deem every argument that's made in the complaint as true, and you take that in conflict with the affidavit that's been filed on behalf of [Lattire], there are issues of material fact there, that preclude summary judgment at this point.

*Id.* at 56 (transcript of summary judgment hearing).

The designation requirement of Trial Rule 56(C) promotes the expeditious resolution of lawsuits and to conserve judicial resources. *Rosi v. Business Furniture Corp.*, 615 N.E.2d 431, 434 (Ind.1993). To achieve those goals, Indiana Trial Rule 56(C) "requires each party to a summary judgment motion to 'designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion.'" *Id.* "In addition, the opposing party must designate to the trial court 'each material issue of fact which that party asserts precludes entry of summary judg-

ment *and the evidence relevant thereto.'"* *Id.* (emphasis added).

■ Thus, when we state, "[t]he court must accept as true those facts alleged by the nonmoving party, construe the evidence in favor of the nonmovant, and resolve all doubts against the moving party[,]" this does not mean that a respondent may "rest upon the mere allegations" of her pleadings once the movant designates evidence to support a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Coffman,* 815 N.E.2d at 526; Ind. Trial Rule 56(E). Rather, only those facts alleged by the respondent/nonmovant and supported by affidavit or other evidence "must be taken as true." *Blankenbaker v. Great Cent. Ins. Co.,* 281 N.E.2d 496, 500, 151 Ind.App. 693, 699 (1972); *see* T.R. 56(E); *see also Tanasijevich's Estate v. City of Hammond,* 178 Ind.App. 669, 672, 383 N.E.2d 1081, 1083 (1978) ("Facts alleged in the complaint must be taken as true except to the extent they are negated by depositions, answers to interrogatories, affidavits, and admissions on file, or by testimony presented at a hearing on a motion for summary judgment.").

Distilled to its essence, McDonald's argument is that the lateness of her memorandum in opposition to summary judgment is of no consequence because she designated no new/additional evidence, and, absent such evidence, Lattire was not deprived of an opportunity to answer. We understand McDonald's "no harm, no foul" argument. However, *if* Lattire met his burden to designate evidence supporting the lack of genuine issues of material fact and his entitlement to judgment as a mat-

ter of law, then McDonald needed to designate evidence to the contrary. Thus, the dispositive issue is whether Lattire demonstrated via his designated evidence that the undisputed material facts negate at least one of the elements essential to McDonald's negligence claim, or that the claim is barred by an affirmative defense.

## II. Was Summary Judgment Properly Granted?

McDonald asserts that a factual dispute remains as to whether Lattire breached his duty of care to McDonald in failing to take precautionary and evasive maneuvers to avoid the accident. Specifically, McDonald contends that material issues of fact exist as to whether Lattire's failure to recognize and avoid the collision with Elgar, failure to keep a proper lookout while operating his vehicle, and negligent actions, "which resulted in a collision with McDonald, was a breach of duty owed to McDonald." Appellant's Br. at 6–7. For support, she cites, *inter alia, Wilkerson v. Harvey,* 814 N.E.2d 686 (Ind.Ct.App.2004), *trans. denied,*[1] *Cole v. Gohmann,* 727 N.E.2d 1111, 1115 (Ind.Ct.App.2000),[2] *Smith v. Beaty,* 639 N.E.2d 1029 (Ind.Ct. App.1994), and *Indiana Department of Highways v. Naumann,* 577 N.E.2d 994 (Ind.Ct.App.1991).

■ To recover under a theory of negligence, a plaintiff must establish these elements: "(1) a duty on the part of the defendant to conform his conduct to a standard of care arising from his relationship with the plaintiff; (2) a failure on the part of defendant to conform his conduct to the requisite standard of care required by the relationship; and (3) an injury to the plaintiff proximately caused by the

---

**1.** Judge Sullivan dissented without opinion in *Wilkerson.*

**2.** In a dissenting opinion, Judge Baker stated that he would have affirmed the grant of summary judgment in favor of Gohmann. *See Cole,* 727 N.E.2d at 1116–18.

breach." *Harris v. Raymond,* 715 N.E.2d 388, 393 (Ind.1999). "Absent a duty, there can be no breach, and therefore, no negligence." *Helton v. Harbrecht,* 701 N.E.2d 1265, 1267 (Ind.Ct.App.1998), *trans. denied.* Often, "whether a duty exists is a question of law for the court to decide." *Rhodes v. Wright,* 805 N.E.2d 382, 386 (Ind.2004). "Courts will generally find a duty where reasonable persons would recognize and agree that a duty exists." *Guy's Concrete, Inc. v. Crawford,* 793 N.E.2d 288, 293 (Ind.Ct.App.2003), *trans. denied.*

▮ It has been said that a motorist has a duty to maintain a proper lookout, to use due care to avoid a collision, and to maintain his vehicle under reasonable control. *See Smith,* 639 N.E.2d at 1032; *see also* Ind.Code § 9–21–5–1 (mandating restriction of speed as necessary to avoid a collision). "[A] motorist is charged with the duty of exercising ordinary care to observe dangers and obstructions and is chargeable with notice of obstructions that a person of ordinary prudence would reasonably be expected to observe." *Smith,* 639 N.E.2d at 1033. That said, "[a] motorist upon a highway regularly used by the public is not required to anticipate extraordinary hazards, nor to constantly expect and search for unusual dangers." *Id.* Further, "[t]he law does not require a person lawfully operating a motor vehicle on a preferred street or highway to turn her head and look to the right and to the left before entering and traversing any non-preferred street intersecting the preferred highway." *Wallace v. Doan,* 155 Ind.App. 316, 324, 292 N.E.2d 820, 825 (1973). Rather, "[u]nless a party has notice to the contrary, he has the right to assume others who owe him a duty of reasonable care will exercise such care." *Berg v. Glinos,* 538 N.E.2d 979, 981 (Ind.Ct.App.1989). In particular, "[t]he preferred driver has the right to assume the non-preferred driver will obey the traffic laws and is not required to proceed overly cautiously into an intersection and to be cognizant of everything in plain view." *Anderson v. Pre–Fab Transit Co.,* 409 N.E.2d 1157, 1164 (Ind. Ct.App.1980); *see also Naumann,* 577 N.E.2d at 996 n. 3 (clarifying that we were not implying that "Naumann had a duty to maintain a lookout for vehicles which may be violating the law."). "[I]f we were to require the preferred driver to check the oncoming traffic on the non-preferred street we would probably cause more accidents than we would prevent." *Frito– Lay, Inc. v. Cloud,* 569 N.E.2d 983, 992 (Ind.Ct.App.1991).

▮ In paragraph nine of her complaint, McDonald alleged that Lattire "was negligent because if he had been keeping a proper lookout, as both eyewitnesses clearly were, he would not have collided with Elgar, which in turn caused him to collide with" McDonald. Appellant's App. at 7. In his motion for summary judgment, Lattire asserted that he conformed his conduct to the requisite standard of care and that rather than being the proximate cause of the crash, his actions were a mere condition that eventually led to the accident with McDonald. *Id.* at 19–20. In his affidavit, which he attached to his summary judgment motion, Lattire swore and affirmed the following:

7. As I approached the intersection of U.S. 31 and County Road 600, Desmon Elgar failed to yield the right of way and drove into my path of travel. Desmon Elgar's vehicle struck the right front panel of my vehicle.

8. At the time Desmon Elgar drove into my lane of travel I was traveling under the posted speed limit of fifty five (55) miles per hour.

9. At the time Desmon Elgar drove into my lane of travel I had no opportunity to avoid the collision.

10. As a result of Desmon Elgar's striking of my vehicle, my vehicle was spun around and forced into the southbound lane of travel on U.S. 31, where my vehicle collided with a vehicle driven by [McDonald].

*Id.* at 16.

■ Lattire, who was driving below the speed limit on a preferred highway, was not required to turn his head to the right and to the left before entering and traversing the non-preferred street intersecting the preferred highway. *See Wallace,* 155 Ind.App. at 324, 292 N.E.2d at 825. Rather, unless he had notice to the contrary, Lattire as the preferred driver, had the right to assume that non-preferred drivers would exercise the appropriate duty of care. *See Berg,* 538 N.E.2d at 981. According to his affidavit, Lattire had *no opportunity* to avoid the collision that occurred when Elgar's vehicle hit Lattire's vehicle. The clear inference from this sworn statement is that regardless of how well Lattire maintained a proper lookout, it was impossible for him to prevent Elgar from unlawfully disregarding the stop sign, failing to yield the right of way, driving into Lattire's path, and striking Lattire's vehicle, which then spun into the southbound lane and into McDonald's vehicle. The duty to keep a proper lookout and use reasonable care does not require a motorist to do the "impossible to avoid a collision." *Schultz v. Hodus,* 535 N.E.2d 1235, 1238 (Ind.Ct.App.1989), *trans. denied.*

This was not a case where Elgar's vehicle was simply stopped in the road, an obstruction around which one would have to maneuver. *Cf. Smith,* 639 N.E.2d 1029 (defendant's semi hit plaintiff's van which was resting in the travel lane after having blown a tire and overturned; a different driver had already safely stopped and come to the van's aid). Further, this was not a situation where Lattire noticed Elgar's vehicle and then had four seconds to react (blink lights, brake, honk horn) to avoid the accident. *Cf. Cole,* 727 N.E.2d at 1116. Here, Lattire, who was traveling under the speed limit on a preferred highway, had *no opportunity* to avoid the accident. Thus, the only reasonable inference from Lattire's affidavit is that he did not breach the duty to maintain a proper lookout. Because Lattire successfully demonstrated via his designated evidence that the undisputed material facts negate at least one of the elements essential to a negligence claim, the burden then shifted to McDonald to produce evidence to the contrary.

McDonald submitted no additional evidence. Instead, she chose to rely upon her complaint, which she asserts was designated by Lattire. The relevant paragraphs of the complaint are as follows:

7. That at such time and place, Amy Shelton, an eyewitness to the accident, was traveling behind [Lattire] prior to and at the time of the accident. Ms. Shelton was not involved in the accident, and was able to avoid the accident because she saw Elgar traveling west on CR 600 S, at a high rate of speed. She slowed down for fear that Elgar was not going to stop, and as a result, was not involved in the collision.

8. That at such time and place, Ben Hart, a second eyewitness to the accident, was traveling behind his girlfriend, Amy Shelton. Mr. Hart indicated in his statement to the police that "he saw the blue car flying down the road so he slowed down because he didn't think it would stop."

9. [Lattire] was negligent because if he had been keeping a proper lookout, as both eyewitnesses clearly were, he

would not have collided with Elgar, which in turn caused him to collide with [McDonald].

Appellant's App. at 7 (complaint).

McDonald's argument is problematic for a variety of reasons. First, McDonald claims to be "piggybacking" Lattire's designation. However, arguably, Lattire did not *specifically* designate the portions of the complaint upon which McDonald attempts to rely. That is, while Lattire listed the complaint as designated material, we have stated the general rule that designating pleadings in their entirety will fail to meet the specificity required by Trial Rule 56(C). *Abbott v. Bates,* 670 N.E.2d 916, 922 (Ind.Ct.App.1996). In his memorandum in support of summary judgment, Lattire made specific references to various paragraphs of the complaint and to his affidavit, but did not cite to paragraphs 7–9 of the complaint. Thus, it follows logically that McDonald, who was using Lattire's designation, could not rely upon complaint paragraphs 7–9, which arguably were not specifically designated.

Second, even if we liberally view the mere listing of "Complaint for Damages" as a specific designation of paragraphs 7–9, those paragraphs of McDonald's complaint are *allegations*. They are not testimony, affidavits, sworn statements, or evidence of any kind. Again, once a movant has designated evidence to support a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law, the nonmovant may not rest upon the mere allegations of her pleadings; instead, she must designate to the trial court each material issue of fact which that party asserts precludes entry of summary judgment *and the evidence relevant thereto. See Coffman,* 815 N.E.2d at 526; *see also Dommer v. Dommer,* 829 N.E.2d 125, 130 (Ind.Ct.App.2005). Thus,

McDonald should have sought and submitted sworn affidavits from Shelton and Hart if McDonald wished to designate their statements as evidence of a genuine issue of material fact precluding summary judgment. *See Tanasijevich's Estate,* 178 Ind. App. at 672, 383 N.E.2d at 1083.

Third, even if we were to treat paragraphs 7 and 8 of McDonald's complaint as *evidence,* the facts alleged in those paragraphs do not create an issue of material fact regarding *Lattire's* breach of his duty to maintain a proper lookout. Even assuming that both Shelton and Hart truly saw Elgar's vehicle approaching the intersection at a high rate of speed, that they were both concerned that he would not stop, and that neither one was involved in the ensuing collision, none of this constitutes evidence of either Lattire's duty to maintain a proper lookout or breach thereof. Apparently, Shelton was driving behind Lattire, and Hart was driving behind Shelton. Accordingly, Shelton and Hart *must* have been further away from Elgar's vehicle than Lattire was, must have viewed the intersection from perspectives different than Lattire's, and obviously had an opportunity to avoid the collision. None of this creates an issue of fact regarding whether Lattire had any opportunity to avoid the collision. Neither Shelton's nor Hart's "statements" about their *own* positions were relevant to whether *Lattire* could avoid the collision. It is noteworthy that even in the unsworn complaint, neither Shelton nor Hart is alleged to have said that Lattire must have been able to see Elgar with sufficient time to somehow avoid the accident.

To summarize, Lattire met his burden of demonstrating via his designated evidence that the undisputed material facts negate at least one of the elements (breach) essential to a negligence claim. Upon receiving Lattire's motion for sum-

mary judgment and accompanying affidavit, McDonald was free to depose Lattire in the hopes of uncovering contradictory testimony. Instead, McDonald elicited no testimony that Lattire actually saw Elgar, knew he would not stop, had time to take evasive maneuvers, yet did nothing. Indeed, there was a total absence of evidence, expert or otherwise, that Lattire failed to maintain a proper lookout.[3] Therefore, we conclude that summary judgment was appropriately granted. To conclude otherwise would be to erroneously imply that the issue of whether someone maintained a proper lookout under any set of circumstances would always create a question of fact. That cannot be. Instead, this particular case falls within the small percentage of negligence cases appropriately decided on summary judgment.

Affirmed.

FRIEDLANDER, J., and MAY, J., concur.

---

**3.** *Cf. Wilkerson,* 814 N.E.2d 686 (holding that summary judgment was improperly granted where accident reconstruction expert provided some evidence that collision would have been avoided had defendant been driving at an appropriate reduced speed where a snow pile obstructed view at intersection).