# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 25 2018, 9:18 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Asher B. Hill
Wabash Valley Correctional Facility
Carlisle, Indiana

ATTORNEYS FOR APPELLEES

Curtis T. Hill, Jr.
Attorney General

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Asher B. Hill, <br> *Appellant-Plaintiff,* <br><br> v. <br><br> Frank Littlejohn, Robbie Marshall, Christopher Nicholson, Linda VanNatta, Adam Davis, and Wade Collins, <br><br> *Appellees-Defendants* | July 25, 2018 <br><br> Court of Appeals Case No. 49A02-1711-CT-2557 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Patrick Dietrick, Judge <br><br> Trial Court Cause No. 49D12-1510-CT-32839 |

**Crone, Judge.**

# Case Summary

Asher B. Hill, an inmate at Wabash Valley Correctional Facility ("Wabash Valley"), filed a complaint and supplemental complaint against Indiana Department of Correction ("DOC") employees Frank Littlejohn, Robbie Marshall, Christopher Nicholson, Linda VanNatta, Adam Davis, and Wade Collins (collectively "Defendants"), claiming that they violated his Eighth Amendment right against cruel and unusual punishment as well as his due process rights. Defendants filed a motion for summary judgment, which the trial court granted. Hill now appeals, claiming that the trial court erred in granting summary judgment on his Eighth Amendment claims arising from a February 2014 incident. Finding no error, we affirm.

# Facts and Procedural History

The facts most favorable to Hill as the party opposing summary judgment are as follows. Hill is housed in Wabash Valley's secured control unit, which consists of different ranges. Inmates are housed individually and are not permitted to go into each other's cells. The cell doors can only be opened remotely by correctional officers who work in the control pod. When the inmates are outside their cells, they are generally handcuffed and escorted by correctional officers. Each range has an inmate range worker who is responsible for cleaning the common areas and cells.

"Sometime in February 2014[,]" Hill was involved in a verbal altercation with fellow inmate Christopher Bailey, who was a range worker on Hill's range.

Appellees' App. Vol. 2 at 127. Bailey told Hill, "I will have a [correctional officer] roll your door and beat your punk ass, you check in mother f***er." *Id.* Hill and Bailey had no previous history of animosity. "Shortly thereafter" – whether a matter of hours or days is unclear from the record before us – at approximately 8:00 p.m. on February 14, Hill was asleep in his cell when he heard the cell door being opened, which allowed Bailey to enter his cell. *Id.*[1] According to Hill, "I jumped up and I ran into [Bailey]. We fought inside my cell. He got the best of me because I was half asleep." *Id.* Bailey left Hill's cell, and Hill could hear him bragging to other inmates about how he beat up Hill. Hill "grabbed a broomstick and went after Bailey." *Id.* at 128. Bailey grabbed another broomstick. They "swung the sticks at each other but didn't make any contact." *Id.* Hill and Bailey were secured by correctional officers and ordered back to their cells. The entire incident lasted ten to fifteen minutes. Hill suffered cuts inside his lips and on his hands, as well as bruises on his arms and legs as a result of the fight in his cell. He did not think that his injuries were "life threatening," but he "asked to see the nurse because [he] wanted it documented medically[.]" *Id.* at 134. "[T]he nurse never came." *Id.* "The next day both [his] eyes had dark marks underneath them." *Id.* at 128.

[4] On February 18, DOC Internal Affairs Investigator Randall Rasner was assigned to investigate the incident. In his report, which was completed on

---

[1] Defendants allege that a prison surveillance video contradicts Hill's claim that Bailey entered his cell. Hill alleges that Defendants deleted the portion of the video that shows Bailey entering Hill's cell. Because Defendants concede for purposes of summary judgment that Bailey entered Hill's cell, we need not address the matter further.

February 21, Rasner stated that Correctional Officer Dustin Robbins was operating the control panel in the control pod on February 14 and had received "very little training" in that regard. *Id*. at 203. Rasner interviewed Robbins and zone supervisor Lieutenant Christopher Nicholson. According to Rasner, Robbins "openly admitted that he did not scrutinize his actions closely enough and let keeping track of the officer (A[dam] Davis), as he was doing his rounds, to be an added distraction." *Id*. Robbins also "stated that he opened the door to [the cell] believing that [Bailey] was going to be cleaning [it] and that it was an empty cell, when in actuality it was occupied by Hill …." *Id*. Rasner and Nicholson "were in agreement that this incident happened as a result of human error and that no malicious intent was involved." *Id*. at 204.

[5] On March 5, Hill filed a grievance with Wabash Valley officials regarding his altercation with Bailey. He asserted that Davis opened his cell door so Bailey could attack him and that "this is not an isolated incident." Appellant's App. Vol. 2 at 30. Hill stated that on October 22, 2011, Officer Keller opened his cell door; when Hill went to the door, Officer Everhart "was standing there with handcuffs around his hands like brass knuckles challenging [him] to a fight." *Id*. Hill asked for the matter to be investigated and for "appropriate disciplinary action" to be taken against "all officers involve[d]" because he "fear[ed] for [his] life and safety." *Id*.

[6] On March 26, a response was issued to Hill's grievance that reads in relevant part as follows:

Internal Affairs Supervisor R[obbie] Marshall's Statement - This matter was fully investigated by the Office of Internal Affairs. The offender will not be provided the outcome of the investigation.

Lieutenant C[hristopher] Nicholson's Statement - I investigated the complaint of Asher Hill. The complaint was over his door being opened while the range runner was on the range, both offenders got into a fight. This incident was investigated by Internal Affairs.

Assistant Superintendent F[rank] Littlejohn's Statement via Phone - The incident was investigated and appropriate actions were taken.

G.S. Finding - Per the statements noted above the incident was investigated and appropriate action was taken.

GRIEVANCE FOUNDED/ISSUE ADDRESSED

*Id.* at 31. On April 4, Hill filed a grievance appeal in which he essentially reasserted the allegations in his grievance. On September 29, DOC Grievance Manager Leslie VanNatta issued the following response: "Your appeal has been reviewed and appropriate actions were taken. Grievance appeal denied." Appellees' App. Vol. 2 at 63.

[7]     In October 2015, Hill filed a complaint against Defendants in their official and individual capacities under 42 U.S.C. § 1983 ("Section 1983"), alleging that they "violated the Eighth Amendment by their deliberate indifference to [his] safety and acted clearly outside the scope of their employment when they criminally and maliciously exposed [him] to violence at the hands of another

prisoner" in February 2014.[2] Appellees' App. Vol. 2 at 42. He further alleged that prior to that incident he had notified Littlejohn, Marshall, and Nicholson "in writing about their subordinate officers breaching security by rolling his cell door and challenging him to a fist fight, but apparently [they] did nothing to rectify the problem" because Davis "breached security again when he rolled [Hill's] cell door to allow him to be attack[ed] by another prisoner and thereby forcing him into a physical confrontation." *Id.* at 47. Hill also alleged that Nicholson and Correctional Officer Wade Collins "criminally and maliciously destroyed" his television. *Id.* at 49. Hill requested $25,000 in compensatory damages and $10,000 in punitive damages for his physical injuries and $160 in compensatory damages for his television.

[8] In March 2016, Hill filed a supplemental complaint alleging that in January 2016 two other correctional officers had improperly "open[ed] the shower door while [he] was taking a shower in [an] attempt to provoke [him] into a fight." *Id.* at 87.[3] Hill further alleged that "the defendants [had] done absolutely nothing to rectify the problem with their subordinate officers breaching security

---

[2] Section 1983 states in pertinent part,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State …, subjects, or causes to be subjected, any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ….

[3] Hill filed a grievance regarding this incident, which was denied. There is no indication that he filed a grievance appeal.

….." *Id*. at 88.  Hill did not specifically allege any Eighth Amendment violations or request any additional relief for this incident.

[9]  Hill was deposed in November 2016.  In March 2017, Defendants filed a motion for summary judgment as to "all claims presented in the complaint and supplemental complaint."  *Id*. at 8.  Among other things, Defendants asserted that Robbins, not Davis, opened the cell door before Hill's fight with Bailey, and therefore Davis was not personally involved in the alleged Eighth Amendment violation.  Hill filed a response to Defendants' motion.  Defendants were granted leave to file a reply, in support of which they designated an affidavit from Robbins stating that he accidentally opened the door to Hill's cell while Davis was patrolling the range.  Hill was granted leave to file a surreply, in support of which he designated an affidavit from a fellow inmate stating that he saw Davis "working in the control pod when the altercation between Hill and Bailey occurred."  Appellant's App. Vol. 2 at 28.

[10]  In September 2017, the trial court issued an order that reads in relevant part as follows:

> Regarding [Hill's] Eighth Amendment claim under 42 U.S.C. Section 1983 stemming from an altercation that occurred on February 14, 2014 and a shower cell incident that occurred in 2016, the Court **FINDS** that two basic requisites for liability are absent from [Hill's] claim.  First, Defendants in their official capacities are not "person[s]" subject to suit under Section 1983.  Second, even if the Defendants were named in their individual capacities, they lack the requisite personal involvement for a successful Eighth Amendment claim.

Regarding [Hill's] Procedural Due Process claim under the Fourteenth Amendment for destruction of property the Court **FINDS** that the Defendants named in this claim were not personally involved, and even if they were the claim would fail as it falls within the Supreme Court's holding in *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Not only was [sic] there meaningful post-deprivation remedies available to [Hill], but the State voluntarily provided [Hill] a different television after [Hill] complained about the original television being broken. This replacement was a suitable compensation for the purposes of Due Process; therefore, there was no Due Process violation.

**IT IS THERFORE ORDERED, ADJUDGED** and **DECREED** that judgment be entered in favor of Defendants Frank Littlejohn, Robbie Marshall, Christopher Nicholson, Linda Van[N]atta, Adam Davis, and Wade Collins.

*Id.* at 14-15.

[11]  Hill now appeals the trial court's ruling on his Eighth Amendment claims arising from the February 2014 incident; he does not challenge the trial court's determination that Defendants are not amenable to suit in their official capacities. He does not specifically challenge the trial court's ruling on his Eighth Amendment claims, if any, arising from the January 2016 incident, so we summarily affirm as to those claims.[4] Hill also does not challenge the trial court's ruling on his due process claims, so we summarily affirm as to those claims, thereby removing Collins from the equation in this appeal.

---

[4] The arguments raised in Hill's initial brief relate solely to the February 2014 incident. *See* Appellant's Br. at 14 ("There is factual dispute about whether defendant Davis was working in the control pod February 14, 2014.") and 19 ("There is factual dispute as to whether defendants Littlejohn, Marshall, Nicholson and VanNatta are liable for their subordinate opening Hill's cell door to facilitate the attack on him.").

# Discussion and Decision

## Section 1 – The trial court did not err in granting Defendants' summary judgment motion.

[12] Hill contends that the trial court erred in granting Defendants' summary judgment motion. He has litigated this proceeding pro se, and we hold him "to the same performance standards as practicing attorneys." *Lee v. State*, 91 N.E.3d 978, 990 (Ind. Ct. App. 2017). Our standard of review is well settled:

> When reviewing the grant or denial of summary judgment, this court applies the same standard as the trial court. Specifically, we must determine whether there is a genuine issue of material fact requiring a trial and whether the moving party is entitled to judgment as a matter of law. Neither the trial court nor the reviewing court may look beyond the evidence specifically designated to the trial court. A party seeking summary judgment must make a prima facie showing that there are no genuine issues of material fact and that the party is entitled to judgment as a matter of law. Once the moving party satisfies this burden through evidence designated to the trial court pursuant to Trial Rule 56, the nonmoving party may not rest on its pleadings, but must designate specific facts demonstrating the existence of a genuine issue for trial. On appeal, we will assess the trial court's decision to ensure that the parties were not improperly denied their day in court. A genuine issue of material fact exists where facts concerning an issue that would dispose of the litigation are in dispute or where undisputed material facts are capable of supporting conflicting inferences on such an issue.

*Handy v. P.C. Bldg. Materials, Inc.*, 22 N.E.3d 603, 605-06 (Ind. Ct. App. 2014) (quoting *Hassan v. Begley*, 836 N.E.2d 303, 306-07 (Ind. Ct. App. 2005)), *trans. denied* (2015).

[13] "A trial court's order granting or denying a motion for summary judgment is cloaked with a presumption of validity." *McDonald v. Lattire,* 844 N.E.2d 206, 211 (Ind. Ct. App. 2006). "A party appealing from an order granting summary judgment has the burden of persuading us that the decision was erroneous." *Id.* "The trial court's findings and conclusions are not binding upon this court, but do facilitate appellate review and offer insight into the trial court's rationale for its decision." *Id.* Although we are limited to reviewing only the evidence designated to the trial court, we are not constrained to the claims and arguments presented below, and "we may affirm a grant of summary judgment on any theory supported by the designated evidence." *Lagro Twp. v. Bitzer*, 999 N.E.2d 902, 904 (Ind. Ct. App. 2013).

[14] The Eighth Amendment to the United States Constitution prohibits the infliction of "cruel and unusual punishment." The Constitution does not mandate comfortable prisons, but it does not permit inhumane ones, and "'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment[.]'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). The Constitution imposes duties on prison officials, "who must provide humane conditions of confinement," including "'tak[ing] reasonable measures to guarantee the safety of the inmates[.]'" *Id*. (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). In particular, prison officials have a duty to protect prisoners from violence at the hands of fellow prisoners. *Id*. at 833. "Being violently assaulted in prison is simply not 'part of the penalty that

criminal offenders pay for their offenses against society.'" *Id*. at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

[15]     "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id*.  "[I]nmates are entitled to relief only when their injury is objectively serious and the prison official acted with deliberate indifference to the inmate's safety." *Fisher v. Lovejoy*, 414 F.3d 659, 662 (7th Cir. 2005) (citing, inter alia, *Farmer*, 511 U.S. at 834).[5]  Here, as Defendants point out, "Hill suffered what amounted to no more than minor bumps and bruises" during his altercation with Bailey, which Hill initiated by jumping up and running into Bailey.  Appellees' Br. at 26-27.  Hill requested a nurse because he wanted to document his injuries, but his own deposition testimony establishes that those injuries were not objectively serious.  *See* Appellees' App. Vol. 2 at 134 (Hill's deposition) ("I didn't think my, you know, busted lip and […] little bruises was like life threatening, I didn't feel like, you know, I was going to die or anything […].").  Hill cites *Brown v. Budz*, 398 F.3d 904 (7th Cir. 2005), to support his assertion that he was "severely beaten[,]" Appellant's Reply Br. at 18, but that opinion offers no details regarding the plaintiff's injuries beyond saying that another detention facility resident "attacked and severely beat [him] several times in succession, causing [him] to suffer physical

---

[5] In his complaint and supplemental complaint, Hill did not request injunctive relief to protect himself against harm from future door-rolling incidents.

injuries." *Brown*, 398 F.3d at 907-08. Because Hill has failed to demonstrate a genuine issue of material fact regarding whether his injuries were objectively serious, we affirm the trial court's entry of summary judgment for Defendants.[6]

[16] Affirmed.

Bailey, J., and Brown, J., concur.

---

[6] Consequently, we need not address whether genuine issues of material fact exist regarding whether Davis was the officer who opened Hill's cell door, whether Defendants were deliberately indifferent to Hill's safety, or whether Defendants are entitled to qualified immunity, among other things.