## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 01 2020, 8:34 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Robert J. Palmer
Mishawaka, Indiana

ATTORNEYS FOR APPELLEE

Clint A. Zalas
Alex C. Bowman
South Bend, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

Anonymous Physician,

*Appellant-Defendant,*

v.

Ian Michelle Thompson,

*Appellee-Plaintiff*

May 1, 2020

Court of Appeals Case No.
19A-CT-2278

Appeal from the St. Joseph Superior Court

The Honorable Jenny Pitts-Manier, Judge

Trial Court Cause No.
71D05-1805-CT-198

**Altice, Judge.**

## Case Summary

[1]     Anonymous Physician (Physician) last provided medical care to Ian Thompson in 1999.  Many years later, Thompson filed a proposed medical malpractice

complaint against him. Physician filed a motion for summary judgment, arguing that Thompson's claims were barred by the applicable statute of limitations. The trial court denied summary judgment and, on Physician's motion, certified the order for interlocutory appeal.

We reverse and remand.

## Facts & Procedural History

Physician, as an OB/GYN, treated Thompson at the South Bend Clinic between January 1997 and early 1999, when Thompson was in her early thirties. Prior to seeing Physician, Thompson had a rather complex history of gynecological issues and procedures, which included three cervical biopsies. As a result, Thompson had a significantly shortened cervix.

When Thompson became pregnant in early 1997, Physician determined that Thompson needed a transvaginal cerclage to help prevent preterm labor due to the condition of her cervix. Physician surgically placed the transvaginal cerclage in her cervix in April 1997. Despite this, Thompson went into preterm labor and her son was delivered via cesarean section, not performed by Physician, on July 21, 1997. During one of her postpartum visits, the cerclage was removed by Physician in the office.

By January 1998, Thompson was pregnant again and sought treatment from Physician. Due to the high-risk nature of the pregnancy, Physician consulted with Dr. Kurt Stiver, a maternal fetal medicine specialist, to determine whether

a cerclage should be used and, if so, whether a transabdominal cerclage would be preferred over a transvaginal cerclage. Physician noted that he had no experience with a transabdominal cerclage and would need another provider to perform the procedure if indicated. Dr. Stiver saw Thompson on February 24, 1998, and determined that a transabdominal cerclage was the best option. Dr. Stiver referred Thompson to Dr. Leo Bonaventura for placement of the transabdominal cerclage.

[6] Thompson had a transabdominal cerclage placed sometime in March 1998, but the record before us contains no verification that Dr. Bonaventura performed the surgery and no records relating to that procedure. It is clear, however, that Physician was not involved in the procedure, as he had never – and has never since – placed or removed a transabdominal cerclage.[1]

[7] Physician then resumed care of Thompson throughout her pregnancy, which ended with an elective cesarean section on September 8, 1998. Prior to the surgery, Thompson and Physician discussed sterilization options, including a hysterectomy, and decided on a bilateral partial salpingectomy (removal of a portion of her fallopian tubes) to be done along with the cesarean section. The

---

[1] Based on research, Physician understood that removal of transabdominal cerclages can be "very difficult." *Appellant's Appendix Vol. 3* at 46. Regarding the risks, he explained during his deposition:

> Again, I don't do them, so it would just be relying on what I've read. Number one, you sometimes can't see it because of scar tissue. Again, they can have significant bleeding, which can lead to transfusions, hysterectomy…. And then the risk of injuring adjacent structures, because you're working next to the bladder, the intestines. So from what I have read, it can be very difficult to remove, and you can have pretty significant complications from that.

*Id*. Given these risks, "it's not uncommon for a transabdominal cerclage to never be removed." *Id*. at 55.

pre- and post-operative medical reports indicate that the transabdominal cerclage remained in place. Although it is unclear whether these reports were ever provided to Thompson, Physician testified in a deposition, based on his standard operating procedure: "I just know that it was part of our discussion preoperatively through the consent process that [the cerclage] would stay in place[.]" *Appellant's Appendix Vol. 3* at 57. The only procedures planned and consented to were the cesarean section and the bilateral partial salpingectomy. Removal of the transabdominal cerclage was not part of the planned operation.

[8] Thompson had postpartum visits with Physician in September and October 1998. The brief records from these appointments make no reference to any discussion regarding the transabdominal cerclage.

[9] On November 20, 1998, Thompson had her final office visit with Physician for a follow-up pap smear. Thompson was also diagnosed with a (reoccurring) umbilical hernia at the time. Physician referred Thompson to another physician to treat the hernia. Upon receiving the results of the pap, Physician also referred her to a gynecological oncologist for a colposcopy and opinion regarding whether a total hysterectomy was needed. Dr. Katherine Look examined Thompson in March 1999 and advised that she proceed with either a LEEP conization or a hysterectomy. Thompson indicated that she would discuss the options with her husband and then get back in touch with Dr. Look, but Thompson never followed up with Dr. Look. Thompson's last contact with Physician for treatment was a phone call in April 1999.

[10] On August 18, 2014, Thompson had a gynecological visit with Dr. Carlton Lyons for treatment of a uterine mass and related pelvic pain. Thereafter, on April 29, 2015, Dr. Lyons performed a total hysterectomy on Thompson, along with other related procedures. During the surgery, Dr. Lyons discovered and removed the transabdominal cerclage, which had "generat[ed] tremendous scar tissue and adhesions" between the bladder and left side of the uterus. *Id.* at 3. As a result, the surgery took a great deal of time.

[11] On October 12, 2016, Thompson filed her proposed complaint with the Indiana Department of Insurance (the Department). Thompson alleged, incorrectly, that Physician performed the surgery that placed the transabdominal cerclage. Thompson went on to allege that Physician negligently failed to remove the transabdominal cerclage at the time of her 1998 cesarean section and failed to inform her both that it was not removed and of the risks of retaining the cerclage. Thompson alleged, in the complaint, that the "negligent conduct was not realized, nor in the exercise of ordinary diligence could it be realized, until April 29, 2015" when Dr. Lyons discovered the cerclage. *Id.* at 12.

[12] While the matter remained pending with the Department, Physician invoked the jurisdiction of the trial court in May 2018 by filing a motion for preliminary determination to compel discovery. Thereafter, on April 17, 2019, Physician filed the instant motion for summary judgment arguing that the claims were barred by the two-year medical malpractice statute of limitations. In support of his motion, Physician noted that the alleged malpractice occurred in 1998, approximately eighteen years before Thompson's proposed complaint was filed.

Further, Physician designated evidence that Thompson knew, or should have known, in 1998 that the transabdominal cerclage remained in place following the cesarean section. The designated evidence included medical records from the South Bend Clinic (including records related to Physician's treatment of Thompson), medical records from Dr. Lyons's treatment of Thompson, and Physician's deposition taken in October 2018.

[13] Thompson filed a response to the motion for summary judgment on May 17, 2019. In her response, Thompson summarized her position as follows:

> Physician failed to inform Ms. Thompson … that the cerclage—a polyester—fiber vestige of Ms. Thompson's fertility—remained wrapped around her cervix. Not until seventeen years later would Ms. Thompson discover the abandoned cerclage in the painful fibrotic mess filling her abdomen. Here, the designated evidence makes clear that Physician remained silent as to the presence of the cerclage and Physician's silence was negligent. Ms. Thompson remained unaware of the cerclage until April 2015.

*Id*. at 72-73. Thompson filed no additional designated evidence in support of her summary judgment response.

[14] The trial court held a brief summary judgment hearing on June 26, 2019. At the hearing, counsel for Thompson acknowledged that Thompson had not been deposed and, thus, indicated "unfortunately I'm not operating with a record of what the Plaintiff has testified to." *Transcript* at 14. Despite this lack of deposition testimony, counsel indicated a belief that Thompson thought the cerclage was removed at the time of the cesarean section. Further, counsel

suggested that Thompson did not actually learn that the cerclage remained in place until the 2015 hysterectomy. The following colloquy took place between Thompson's counsel and the trial court:

> [Court]: So if we haven't taken her deposition, the lack of consultation is the absence of a note in the record? What's the evidence to show there's a lack of consultation?
>
> [Counsel]: That there is - - that there's a medical record that lacks that consultation.
>
> [Court]: Okay. So it's an absence of information.
>
> [Counsel]: That's correct. Yeah. And that's where - - I believe that that's part of where this dispute of material fact comes in. Is that you have - - you have the Defendant testifying that, "This is what I should have said," the records say something different, and the Plaintiff who has pled that that's not - - that I - - "I had no idea that this was what the circumstance was until my subsequent physician told me 18 years down the road."

*Id.* at 15. Physician's counsel concluded his remarks by observing:

> Your Honor, we've heard a lot about what the Plaintiff thought, what the Plaintiff knew. There's no evidence. It would have been simple for them to obtain an affidavit from the Plaintiff to create a genuine issue of material fact as to what she understood.
>
> But we don't have that. What we have is the designated evidence that we provided where she went to another physician in Indianapolis, had it … placed, she knew that the Defendant in this case does not do transabdominal cerclages, has never done them. The operative reports indicate that it was in place before

the C section and was in place after the C section. So … that was approximately 18 years before the Complaint was filed.

****

We're simply talking about was there information that she knew more than two years before she filed the proposed Complaint from which she could understand that the cerclage was not removed.

*Id*. at 17-18.

The trial court took the matter under advisement and then issued an order, on July 12, 2019, denying Physician's motion for summary judgment. On Physician's motion, the trial court certified the order for interlocutory appeal on September 3, 2019. This court accepted jurisdiction on November 1, 2019. Physician now appeals from the denial of his motion for summary judgment.

## Discussion & Decision

When a trial court's summary judgment order is challenged on appeal, our standard of review is the same as that of the trial court. *Manley v. Sherer*, 992 N.E.2d 670, 673 (Ind. 2013). Summary judgment shall be granted "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). "We construe all factual inferences in favor of the non-moving party and resolve all doubts as to the existence of a material issue

against the moving party." *Manley*, 992 N.E.2d at 673. On review, we are limited to the designated evidence before the trial court. *See* T.R. 56(H).

[17] Where, as here, a defendant in a medical malpractice action asserts the statute of limitations as an affirmative defense on summary judgment, the defendant bears the burden of establishing that the action was commenced outside that statutory period. *Manley*, 992 N.E.2d at 674. "Once the defendant has established that the action was filed outside the statute of limitation, the burden shifts to the plaintiff to establish 'an issue of fact material to a theory that avoids the defense.'" *Id*. (quoting *Boggs v. Tri–State Radiology, Inc.*, 730 N.E.2d 692, 695 (Ind. 2000)); *see also LeBrun v. Conner*, 702 N.E.2d 754, 757 (Ind. Ct. App. 1998) ("The burden is on the plaintiff to establish that she has exercised reasonable diligence to discover the alleged malpractice."). Our Supreme Court has explained that this burden shifting is appropriate because "the facts establishing any incapacity or the reasonableness of the plaintiff's diligence in filing a claim are uniquely within the plaintiff's knowledge." *Herron v. Anigbo*, 897 N.E.2d 444, 448 (Ind. 2008) (plurality opinion).

[18] "The Indiana Medical Malpractice Act's two-year statute of limitations runs from the date of the negligent act or omission." *Herron*, 897 N.E.2d at 448 (citing Ind. Code § 34-18-7-1(b)). "[W]here the constitutionality of th[is] occurrence-based limitations period as applied to a given case is in issue, the ultimate question becomes the time at which a patient 'either (1) knows of the malpractice and resulting injury or (2) learns of facts that, in the exercise of reasonable diligence, should lead to the discovery of the malpractice and the

resulting injury.'" *Id*. at 448-49 (quoting *Booth v. Wiley*, 839 N.E.2d 1168, 1172 (Ind. 2005)). This critical date is referred to as the "trigger date." *Id*. at 449. "A plaintiff whose trigger date is after the original limitations period has expired may institute a claim for relief within two years of the trigger date." *Id*.

[19] In this case, Physician established that Thompson did not file the action until October 12, 2016, about eighteen years after the alleged negligent conduct and well outside of the two-year medical malpractice statute of limitations. *Cf. Manley*, 992 N.E.2d at 674 (medical malpractice defendant met their initial burden on summary judgment by establishing that the action was filed four days after the two-year statute of limitations had run). Thus, the burden shifted to Thompson to establish a genuine issue of fact to rebut the defense. *Cf. id.* (holding that the plaintiff's designated evidence established genuine issues of fact as to the trigger date of the malpractice claim).

[20] Thompson argues, as she did below, that the affirmative defense was rebutted with evidence that she did not learn that the transabdominal cerclage remained in place (i.e., it was not removed by Physician during the 1998 cesarean section) until her 2015 hysterectomy, which was performed by Dr. Lyons. In other words, she claims that the designated evidence raises a question of fact regarding the proper trigger date, making summary judgment improper. We cannot agree, as there is no designated evidence that Thompson acted with reasonable diligence in this case.

Once a movant designates evidence to support a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law, the nonmovant cannot simply rest upon the mere allegations of her pleadings. *McDonald v. Lattire*, 844 N.E.2d 206, 212 (Ind. Ct. App. 2006). "Rather, only those facts alleged by the respondent/nonmovant and supported by affidavit or other evidence 'must be taken as true.'" *Id.* (quoting *Blankenbaker v. Great Cent. Ins. Co.*, 281 N.E.2d 496, 500 (Ind. Ct. App. 1972)); *see also* T.R. 56(E) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."). Allegations in a complaint "are not testimony, affidavits, sworn statements, or evidence of any kind." *McDonald*, 844 N.E.2d at 215.

Here, Physician's designated evidence showed that he did not place the transabdominal cerclage in Thompson and has never placed or removed this type of cerclage in his practice. He also understood that there were risks associated with removal of transabdominal cerclages and that they could remain inside patients indefinitely sometimes. Additionally, Physician testified in his deposition that the only procedures planned and consented to by Thompson were the cesarean section and bilateral partial salpingectomy on September 8, 1998, and removal of the transabdominal cerclage was not part of the planned operation. Physician testified further that, based on his standard

operating procedure: "I just know that it was part of our discussion preoperatively through the consent process that [the cerclage] would stay in place[.]" *Appellant's Appendix Vol. 3* at 57.

[23]    In addition to making a prima facie showing that the proposed complaint was filed well beyond the two-year statute of limitations, Physician designated evidence, as set out above, indicating that Thompson was actually aware of, or at the very least should have been aware of, the continued placement of the transabdominal cerclage following the 1998 surgery. Although the medical records from Thompson's two postpartum appointments with Physician do not reference any discussions about the cerclage, this does not negate Physician's deposition testimony that he would have discussed this preoperatively with her and that removal of the cerclage was not part of the planned procedures.[2]

[24]    Thompson's attempt to raise a question of fact based on unsupported allegations in her complaint – reasserted by her counsel at the summary judgment hearing – is improper. She could have submitted her own affidavit setting forth her knowledge or belief regarding the removal of the cerclage, when she first learned of its continued placement, and/or what occurred during her consultations with Physician, but she failed to designate any such evidence. *Cf. McDonald*, 844 N.E.2d at 215 ("McDonald should have sought and

---

[2] We need not reach the issue presented by the parties regarding whether knowledge of the pre- and post-operative reports – which both documented the continued placement of the cerclage – should be imputed to Thompson. Regardless, Physician's deposition testimony indicates that Thompson was placed on actual notice of this fact pre-operatively during discussions with her regarding the planned surgery.

submitted sworn affidavits from Shelton and Hart if McDonald wished to designate their statements as evidence of a genuine issue of material fact precluding summary judgment."). Considering only the properly designated evidence, we conclude that there is no genuine issue of fact regarding whether Thompson knew of the continued placed of the transabdominal cerclage at the time of her 1998 surgery.

[25] In sum, Physician met his initial burden on summary judgment by designating prima facie evidence that the action was commenced outside that statutory period. Thompson, on the other hand, wholly failed to designate evidence to meet her burden of establishing an issue of fact to rebut the statute of limitations defense. Thus, the trial court erred when it denied summary judgment and, on remand, is directed to enter summary judgment in favor of Physician.

[26] Judgment reversed and remanded.

Bailey, J. and Crone, J., concur.